1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8              FOR THE EASTERN DISTRICT OF CALIFORNIA

9
ELENA YULAEVA,
10
                              NO. CIV. S-09-1504 LKK/KJM
11         Plaintiff,

12      v.
                                   O R D E R
13 GREENPOINT MORTGAGE FUNDING,
   INC.; MORTGAGE ELECTRONIC
14 REGISTRATION SYSTEMS, INC.;
   EMC MORTGAGE CORPORATION; and
15 DOES 1 through 10, inclusive,

16         Defendants.

17 _____/

18      The core of this action is a loan plaintiff Elena Yulaeva

19 received from defendant Greenpoint Mortgage Funding, Inc.

20 ("Greenpoint") in order to finance the purchase of her home.

21 Plaintiff filed a complaint against Greenpoint, Mortgage Electronic

22 Registration Systems, Inc. ("MERS"), and EMC Mortgage Corporation

23 ("EMC") enumerating twelve state and federal causes of action

24 arising out of the loan transaction and subsequent foreclosure on

25 her home.  Pending before the court is a motion by defendants MERS

26 and EMC to dismiss all claims against them. Defendant Greenpoint

                                  1

has not stated an appearance and is not party to the present motion.   For the reasons stated below, defendants' motion to dismiss is granted in part and denied in part.[1]

## I. BACKGROUND[2]

This case shares features common to the many other home loan cases currently working their way through the federal district courts.   In October 2005, plaintiff acquired an adjustable rate mortgage from defendant Greenpoint. Compl. ¶ 13, Defs.' RFJN Ex. 2 (Adjustable Rate Rider, p. 2-3).   Plaintiff borrowed $420,000 from defendant Greenpoint to purchase a home, the loan being secured by plaintiff's property through a deed of trust. Compl. ¶ 3, Defs.' RFJN Ex. 2 (Deed of Trust, p.1).   The loan provided for an initial period of low fixed payments, after which payments would increase.   The fixed rate period ended at some unspecified point, and plaintiff has been unable to make the higher subsequent payments.   Since then, one or more defendants have initiated foreclosure proceedings on her home. Having provided this general background, the court turns to

---

[1] The only motion on the docket is a motion to dismiss. However, plaintiff's complaint, filed in state court on April 20, 2009 requested a preliminary injunction and temporary restraining order under Cal. Code Civ. Pro. § 527.   Nothing indicates whether any proceedings on this matter were conducted prior to removal on June 1, 2009.   Plaintiff's opposition to the pending motion to dismiss again requests a preliminary injunction and various other relief.   Because of the unsettled status of the pleadings and a failure of all parties to brief the issue, the request for injunction is not further considered.

[2] The allegations described herein are taken from the complaint and are taken as true for the purpose of the pending motions only.

2

1  plaintiff's detailed allegations.

2  **A.    Identity and Roles of The Parties**

3        **1.    The Deed of Trust, and The Parties' Roles Therein**

4        California law recognizes two formally distinct ways in

5  which a loan may be secured by real property,  either by a

6  mortgage or a deed of trust.   A mortgage involves two parties,

7  the borrower/mortgagor provides a lien on the real property to

8  the lender/mortgagee.   A deed of trust ordinarily involves three

9  parties, the borrower/trustor conveys the right to sell the

10  property to a trustee, for the benefit of the

11  lender/beneficiary.   The "practical effect" of this transfer of

12  the right of sale is the creation of a lien on the subject

13  property.   <u>Monterey S. P. P'ship v. W. L. Bangham</u>, 49 Cal. 3d

14  454, 460 (1989). Notwithstanding the fact that the right of sale

15  is formally lodged with the trustee, both the beneficiary and

16  the trustee may commence the nonjudicial foreclosure process.

17  <u>Id.</u> (citing Cal. Code Civ. Proc. § 725a), <u>Kachlon v. Markowitz</u>,

18  168 Cal. App. 4th 316, 340 (2008) (citing Cal. Civ. Code §

19  2924). "Indeed, the beneficiary may act as trustee and enforce

20  the trustee's authority under a deed of trust, including the

21  power of sale."   <u>Kalchon</u>, 168 Cal. App. 4th at 340.   Thus,

22  although mortgages and deeds of trust are formally distinct,

23  under California law, "'there is little practical difference'"

24  between the two.   4 Witkin Summary of California Law Ch. VIII, §

25  5 (quoting <u>Domarad v. Fisher & Burke</u>, 270 Cal. App. 2d 543, 553

26  (1969)); <u>see also</u> <u>Monterey S.P. P'ship</u>, 49 Cal. 3d at 460.

1       Here, plaintiffs' loan is secured by a deed of trust.  This

2  deed deviates from the norm by including a fourth party.  Defs.'

3  RFJN Ex. 2.  As is typical, the trustor is the borrower (the

4  plaintiff here), and the trustee is a third party not otherwise

5  involved in the loan.  Id. (Deed of Trust, p. 1).  However,

6  whereas the beneficiary of the trust is normally the lender

7  (Greenpoint), the deed of trust here provides that "MERS is the

8  beneficiary."  Id.  The deed of trust further explains that MERS

9  "is acting solely as a nominee for Lender [Greenpoint] and

10  Lender's successors and assigns."  Id.  The deed provides that

11  "MERS (as nominee for Lender and Lender's successors and

12  assigns) has the right . . . to foreclose and sell the

13  property."  Id. (Deed of Trust, p. 3).

14       Plaintiff's complaint alleges that "MERS is the beneficiary

15  for the promissory note and mortgage at issue," i.e., the deed

16  of trust.  Compl. ¶ 7.  However, plaintiff's other allegations,

17  as well as plaintiff's arguments raised in opposition to the

18  present motion, dispute whether MERS is the "true current

19  beneficiary" of the deed of trust.  See, e.g., Opp'n at 10:4.

20  Yet another party appears related to this transaction.  After

21  the loan was made and the deed of trust was recorded, defendant

22  EMC became the servicer of the loan.  Compl. ¶¶ 4-5.[3]

23  ////

24

25       [3] The multiplication of parties and elaboration of what is
   essentially a simple transaction appears to raise questions about
26  whether the transaction is as straightforward as it ordinarily is.

## 2.   Subsequent Roles of The Parties

Plaintiff contends that after the initial transaction the identities of some of the parties changed.  First, plaintiff alleges that the beneficiary under both the promissory note and the deed of trust has changed, although plaintiff offers alternative allegations as to who the present beneficiaries are.  At several points, plaintiff alleges that "promissory note and mortgage" have been assigned to EMC.  Compl. ¶ 5, see also Compl. ¶ 19.  Plaintiff bases this allegation on the Notice of Default, which identifies MERS "as Nominee for EMC" under the deed of trust.  Compl. Ex. A.  Plaintiff alternatively alleges that none of the three named defendants is "the holder[] of the [promissory] note identified in" the deed of trust, and that she was unable to acquire proof of the current owner of the promissory note.  Compl. ¶¶ 20-21.  In her opposition memorandum, plaintiff elaborates by alleging that Greenpoint "securitized" the promissory note, thereby assigning it to multiple unknown parties.[4]  Opp'n at 2:9.

Defendants dispute the allegation that the loan has been assigned to EMC, stating that "EMC has no recorded interest under the Loan" or the deeds of trust, citing the deed granting the property to plaintiff, the two deeds of trust, and the

---

[4]  "Securitize, vb.  To convert (assets) into negotiable securities for resale in the financial market, allowing the issuing financial institution to remove assets from its books and thereby improve its capital ratio and liquidity while making new loans with the security proceeds."  Black's Law Dictionary, 8th Ed. 2004

Notice of Default.  The Notice of Default indicates that EMC is the actual (contra nominal) beneficiary under the deed of trust. Interpreting this document in favor of plaintiff, this document indicates that EMC has taken assignment of the loan.  None of the remaining exhibits provide evidence regarding the alleged subsequent assignment, and no exhibit directly addresses who is the current holder of the promissory note--i.e., the creditor.

The court notes that exhibits provided by the parties raise further confusion with respect to any assignment of the promissory note or deed of trust.  Notably, EMC prepared the declaration of compliance with Cal. Civ. Code § 2923.5(b), and attached this declaration to the Notice of Default.  This declaration states that the beneficiary under the deed of trust is Wells Fargo Bank, N.A.  No party has addressed Wells Fargo's role, if any, in this dispute.

A second change since the loan was initiated is that the trustee has changed.  The original deed of trust named Marin Conveyancing Corp. as the trustee.  The notice of default recorded on February 11, 2009, identified Aztec Foreclosure Corp. as the trustee.  Three months later, on May 18, 2009, a document substituting Aztec for Marin as trustee was recorded. Pl.'s RFJN Ex. 1.[5]

////

---

[5] This seemingly preposterous set of "facts" and parties once again suggests that the court must act cautiously and with deliberation unless and until the real facts and parties emerge.

**B.    Plaintiff's Further Allegations**

Plaintiff alleges that defendants failed to make certain required disclosures at the time the loan was entered, that defendants engaged in various other misconduct at that time, and that defendants have subsequently engaged in other misconduct, primarily in connection with their attempted foreclosure of the property.  In her opposition to the motion to dismiss, plaintiff clarified that many of these allegations pertain solely to Greenpoint.[6]  Opp'n at 1:19 - 2:6.

**1.    Failure to Make Required Disclosures**

Plaintiff's first cluster of allegations concerns omissions at the time the loan was entered.  Plaintiff alleges that Greenpoint "failed to disclose to Plaintiff that her income would be insufficient to repay the loan, and further failed to provide Plaintiff with information with respect to reasonable alternatives and/or more conventional loan terms."  Compl. ¶ 37.  Plaintiff further alleges that Greenpoint failed to make certain timely "disclosures with respect to calculation of interest."  Id. at ¶ 36.  Plaintiff argues that these omissions support claims against all defendants for fraud or misrepresentation and a claim against Greenpoint and EMC under TILA.  Id. at ¶¶ 36-38, 48.

---

[6] While the exhibits appear clear on this point, given the remarkable complexity of this case plaintiff's confidence is, itself, questionable. Perhaps, given all the parties that have apparently come and gone in this transaction, it may be that Greenpoint itself was fronting for some other party.

## 2.    Other Misconduct at Origination

Plaintiff also alleges a variety of other misconduct at origination.  Greenpoint allegedly made affirmative misrepresentations regarding a fixed interest rate period, whether plaintiff "would be able to refinance her loan before higher payments kick in," and regarding "mortgage terms that [defendants] had no intention of providing."  Id. at ¶ 43.  In addition, "the purchase price of the property and the loan amount were based on [an] inflated appraisal, . . . and not based on a good faith assessment and confirmation of plaintiff's ability to pay."  Id. at ¶ 37.  Instead, Greenpoint allegedly "inflat[ed] plaintiff's income to qualify her for a loan that she could not in reality afford," Id. at ¶ 43, and otherwise "originate[d] the loan by lowering [its] own loan and statutor[ily] required underwriting standards."  Id. at ¶ 38.  More generally, defendants allegedly used their superior knowledge and bargaining power to conceal and misrepresent certain material facts, "depriving plaintiff of an opportunity to properly review, analyze, and negotiate loan terms."  Id. at ¶ 77.  Plaintiff contends that these allegations support claims for fraud, for a violation of TILA, and for a breach of the implied covenant of good faith and fair dealing.

Separate from the above, defendants allegedly accepted fees or kickbacks in exchange for referrals from other defendants, violating RESPA.  Id. at ¶ 41.

////

### 3.   Defendants' Alleged Subsequent Acts

Plaintiff alleges that defendants have caused "significant damage to Plaintiff's credit history[] by reporting past due payments even though Plaintiff has been working in good faith to reasonably modify loan payment terms in accordance with the received instructions."  Id. at ¶ 65.  Plaintiff also alleges that defendants "intentionally forc[ed] Plaintiff into default and eventually into foreclosure proceedings."  Id. at ¶ 77. This allegation apparently refers to defendants' refusal to renegotiate the loan.

Plaintiff alleges that defendants then initiated foreclosure without first attempting to contact plaintiff to discuss renegotiation of the terms of the loan, violating Cal. Civ. Code § 2923.5.  Compl. ¶ 69.

Plaintiff's opposition memo alleges that she made a "Qualified Written Request," which defendants were required to respond to under RESPA, and that defendants violated this obligation.  Opp'n at 2:19-22.  This allegation does not appear in the complaint, and is not further discussed here.

### C.   The Instant Suit

On April 20, 2009, plaintiff filed a complaint in Sacramento County Superior Court. On June 1, 2009, defendants removed the action to federal court under 28 U.S.C. §§ 1441 *et seq*. On June 8, 2009, defendants MERS and EMC together filed the instant motion to dismiss.

////

**II. STANDARD FOR A FED. R. CIV. P. 12(b)(6) MOTION TO DISMISS**

In order to survive a motion to dismiss for failure to state a claim, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 569 (2007). While a complaint need not plead "detailed factual allegations," the factual allegations it does include "must be enough to raise a right to relief above the speculative level." <u>Id.</u> at 555.

The Supreme Court recently held that Federal Rule of Civil Procedure 8(a)(2) requires a "showing" that the plaintiff is entitled to relief, "rather than a blanket assertion" of entitlement to relief. <u>Id.</u> at 555 n.3. Though such assertions may provide a defendant with the requisite "fair notice" of the nature of a plaintiff's claim, the Court opined that only factual allegations can clarify the "grounds" on which that claim rests. <u>Id.</u> "The pleading must contain something more. . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." <u>Id.</u> at 555, quoting 5 Wright & Miller, Federal Practice and Procedure, § 1216, pp. 235-36 (3d ed. 2004).[7]

---

[7] The holding in <u>Twombly</u> explicitly abrogates the well established holding in <u>Conley v. Gibson</u> that, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. 41, 45-46 (1957); <u>Twombly</u>, 550 U.S. at 560.  Indeed, however, given the apparent rigamarole the defendants have engaged in, it is not clear to this court how plaintiff could know who the responsible parties are, or which of them engaged in unlawful conduct, if anyone did.

On a motion to dismiss, the allegations of the complaint must be accepted as true. See Cruz v. Beto, 405 U.S. 319, 322 (1972). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. See Retail Clerks Int'l Ass'n v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963). In general, the complaint is construed favorably to the pleader. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982). Nevertheless, the court does not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

### III. ANALYSIS

Plaintiff enumerates twelve claims.  These claims seek three separate remedies: (1) they seek rescission of the loan under California law (plaintiff concedes that rescission is not available under TILA); (2) they challenge defendants' authority to foreclose on the property (quiet title, declaratory judgment, unfair debt collection and Cal. Civ. Code § 2923.5(b) claims); and (3) they seek civil damages (unfair debt collection and all remaining claims).

The court's analysis begins with plaintiff's claim for civil conspiracy.  Under California law, civil conspiracy, unlike criminal conspiracy, "is not an independent tort." Applied Equipment Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th

503, 510-511 (2004); see also Doctors' Co. v. Superior Court, 49 Cal. 3d 39, 44 (1989). "Though [civil] conspiracy may render additional parties liable for the wrong, the conspiracy itself is not actionable without a wrong." Okun v. Superior Court, 29 Cal. 3d 442, 454 (1981); see also Sebastian Intern., Inc. V. Russolillo, 162 F. Supp. 2d 1198, 1207 (2001). Accordingly, in Okun, the California Supreme Court dismissed a claim for civil conspiracy to commit various torts when the plaintiff had failed to state a claim for the underlying tort. Okun, 29 Cal. 3d at 454. Thus, the court dismisses plaintiff's separately enumerated claim for civil conspiracy. This is not to conclude that plaintiff may not recover on a civil conspiracy theory. Instead, plaintiff's civil conspiracy allegations are discussed, as is relevant, in the context of plaintiffs' other tort claims.

In the following sections, the court analyzes defendants' arguments for dismissal of the remaining claims. The court first addresses plaintiff's three claims for misrepresentation. The court then turns to plaintiff's non-fraud claims for injunctive relief, and finally addresses her non-fraud claims for damages.

**A.   Misrepresentation and Fraud Claims**

Plaintiff's fourth, fifth, and sixth claims are for fraud, negligent misrepresentation, and "rescission based on fraud" under California Civil Code section 1689, respectively. Insofar as these claims allege affirmative misrepresentations, MERS and EMC argue that plaintiff has failed to plead these claims with

the particularity required by Fed. R. Civ. P. 9(b).  Insofar as

plaintiff's claims are based on omission or concealment rather

than affirmative misrepresentation, MERS and EMC argue that

neither of them had a duty to disclose information to plaintiff.

As I explain, the claims will be dismissed with leave to amend.

### 1.   Affirmative Representations

Plaintiff alleges that defendants affirmatively
misrepresented

> specific terms of the mortgage transaction
> such as a fixed interest rate period and a
> lower mortgage payment and that she would be
> able to refinance her loan before higher
> payments kick in, promising plaintiff
> mortgage terms that they had no intention of
> providing, and inflating Plaintiff's income
> to qualify her for a loan that she could not
> in reality afford.  Plaintiff was further
> misled by representations made to her in her
> attempts to modify the terms of the loan
> when they became too burdensome for her.

Compl. ¶ 43.  These allegations are incorporated into all three

fraud/misrepresentation claims.

Fed. R. Civ. P. 9(b) requires that a claim for fraud or

misrepresentation allege with particularity "the circumstances

constituting fraud or mistake."  The pleading party must "detail

with particularity the time, place, and manner of each act of

fraud, plus the role of each defendant in each scheme."

Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist., 940 F.2d

397, 405 (9th Cir. 1991).  These requirements apply to all

claims averring fraud.  Vess v. Ciba-Geigy Corp. USA, 317 F.3d

1097, 1103-04 (9th Cir. 2003).

1    Plaintiff's allegations do not satisfy this requirement.

2  Nothing indicates when the alleged representations were made,

3  how they were made, or the individual making the

4  representations.[8]  Plaintiff argues that this Rule 9(b) standard

5  nonetheless should not apply, because she "cannot provide the

6  names of those involved on the lender and servicing side of the

7  transaction.  That is information only those parties would

8  know."  Opp'n, 18-19.  Even if this argument is accepted, it

9  does not excuse plaintiff's failure to specify how the alleged

10  affirmative misrepresentations were made (e.g., orally or in

11  writing), or when they were made.  Federal cases relaxing the

12  requirements of Rule 9(b) for claims alleging misrepresentation

13  by omission or concealment do not apply to affirmative

14  representations.  Accordingly, insofar as plaintiff's fourth,

15  fifth, and sixth claims are based on affirmative

16  representations, these claims are dismissed with leave to amend.

17    Of course, given the way the closing papers were executed,

18  it may be that plaintiff can do no more than allege that agents

19  of Greenpoint committed the acts complained of.  If so, she can

20  allege the same, setting for the circumstances limiting her

21

22

23    [8]  Plaintiff's complaint also failed to identify which
defendant made the representations.  "Rule 9(b) does not allow a
24  complaint to merely lump multiple defendants together[,] but
requires plaintiffs to differentiate their allegations when suing
25  more than one defendant."  <u>Swartz v. KMPG LLP</u>, 476 F.3d 756, 764-65
(9th Cir. 2007).  This defect is likely to be at least partially
26  cured by amendment, as plaintiff's opposition attributes these
allegations to defendant Greenpoint.

1  ability to plead more in an amended complaint.[9]

2      **2.   Misrepresentation by Omission or Concealment**

3      Plaintiff also alleges omission as a basis for her three

4  misrepresentation claims.  Greenpoint allegedly "withheld from

5  Plaintiff other information necessary to make [its]

6  [affirmative] representations not misleading, in particular by

7  not providing proper and timely disclosures under TILA."  Compl.

8  ¶¶ 48, 56, 60.  In support of plaintiff's TILA claim, plaintiff

9  alleges that Greenpoint "failed to disclose to Plaintiff that

10  her income would be insufficient to repay the loan, and further

11  failed to provide Plaintiff with information with respect to

12  reasonable alternatives and/or more conventional loan terms."

13  Id. at  ¶ 37.  Plaintiff further alleges that Greenpoint failed

14  to make certain timely "disclosures with respect to calculation

15  of interest."  Id. at ¶ 36.  All of these allegations pertain to

16  conduct at the time the loan was negotiated and entered.[10]

17      To prevail on a claim for fraudulent concealment or

18

19      [9] Because the court concludes that plaintiff has failed to
20  adequately allege a claim for intentional or negligent affirmative
    misrepresentation against any party, the court does not address
21  plaintiff's allegations of civil conspiracy to commit such
    misrepresentation.  Okun, 29 Cal. 3d at 454.  Plaintiff's argument
22  that MERS and EMC aided or abetted an affirmative
    misrepresentation--an argument raised in opposition to this motion
23  but not in the complaint--is similarly predicated on plaintiff
    having successfully stated a claim for misrepresentation as to at
24  least one party owing the plaintiff a duty.  See also Henry v.
    Lehman Commer. Paper, Inc., 471 F.3d 977, 993 (9th Cir. 2006).

25      [10] Although the complaint makes the above allegations as to
    "defendants," plaintiff's opposition memorandum states that these
26  allegations pertain to defendant Greenpoint.

omission under California law, plaintiff must show, inter alia,

that defendants failed to disclose information that they had a

specific duty to disclose.  Cal. Civ. Code §§ 1709-1710, Lingsch

v. Savage, 213 Cal. App. 2d 729, 735 (1963).  Here, defendants

EMC and MERS argue that they owed no such duty to plaintiff.

Plaintiff's opposition does not address this argument, and

plaintiff's complaint does not contain allegations supporting

the inference of such a duty at the time the omissions allegedly

occurred.

Nor has plaintiff alleged facts sufficient to support a

claim for civil conspiracy to commit fraudulent concealment or

omission.  I begin by noting that the California Supreme Court

has explained that allegations of conspiracy "cannot create a

duty.... It allows tort recovery only against a party who

already owes a duty" to the aggrieved party.  Applied Equipment

Corp. 7 Cal. 4th at 514.  Thus, "tort liability arising from

conspiracy presupposes that the coconspirator is legally capable

of committing the tort, i.e., that he or she owes a duty to

plaintiff recognized by law and is potentially subject to

liability for breach of that duty."  Id. at 511.  California

courts have applied this rule in multiple contexts.  See id.

(dismissing claim for civil conspiracy for tortious interference

with contract brought against contracting party), Doctors' Co.

v. Superior Court, 49 Cal. 3d 39, 44 (1989) (insurance bad faith

claim against non-insurer), Gruenberg v. Aetna Ins. Co., 9

Cal.3d 566, 576 (1973) (same),  Klistoff v. Superior Court, 157

16

1  Cal. App. 4th 469 (2007) (when statute imposes duties on certain
2  parties, other parties cannot be liable in civil conspiracy for
3  violation of the statute), <u>Brown v. Professional Community</u>
4  <u>Management, Inc.</u>, 127 Cal. App. 4th 532 (2005) (same), <u>Everest</u>
5  <u>Investors 8 v. Whitehall Real Estate Ltd. Partnership XI</u>, 100
6  Cal. App. 4th 1102 (2002) (claim for civil conspiracy to breach
7  fiduciary duty only available against parties who owe a
8  fiduciary duty), <u>Khajavi v. Feather River Anesthesia Med. Group</u>,
9  84 Cal. App. 4th 32 (2000) (non-employer could not be liable for
10 civil conspiracy to wrongfully discharge employee in violation
11 of public policy).

12       Whatever the extent of the <u>Allied Equipment</u> rule, it cannot
13 mean that a conspiracy in which some members do not owe the
14 primary duty but are *necessary* for the success of the conspiracy
15 are nonetheless free of liability or alternatively, perhaps,
16 that the duty possessing tort feasor has engaged others to
17 conceal or obfuscate his responsibility.  Whether that is the
18 case here is uncertain under the present pleadings.  What is
19 certain is that the plaintiff has not pled such a relationship
20 or necessity.  Accordingly, it follows that the allegations
21 regarding fraud in the making of the loan must be dismissed
22 against EMC and MERS, although with leave to amend.  Moreover,
23 the court's conclusion that no civil conspiracy liability will
24 lie under fraud by omission claim as currently pled does not
25 determine the applicability of civil conspiracy liability as to
26 plaintiff's remaining claims.

### 3.   Rescission: Remaining Issues

The above arguments do not dispose of plaintiff's claims for fraud or misrepresentation based on omissions against defendant Greenpoint.  Insofar as plaintiff's claim for rescission may be based on this remaining claim for fraud, the court adopts MERS and EMC's alternate argument for dismissal of the rescission claim.

To rescind a contract on the basis of fraud under Cal. Civ. Code § 1689(b)(2), a rescinding party must "[r]estore to the other party everything of value which he has received from him under the contract or offer to restore the same upon condition that the other party do likewise, unless the latter is unable or positively refuses to do so."[11]  Plaintiff has not alleged that she has offered to return the loan, and apparently concedes that she is currently unable to do so.  Instead, plaintiff argues that the court may modify the rescission procedures to allow plaintiff to make payments over time.  However, all the cases cited by plaintiff which have accepted such delayed return of the consideration have concerned rescission under TILA, rather than rescission under California law.  Courts interpreting the California statute have held that a party seeking rescission

---

[11] Because of the confusion regarding the identity and roles of the parties in this case, it is not clear which party is the proper defendant in the rescission action, i.e., to which party this offer should have been made or whether any party's able or willing to restore the property to plaintiff free of the indebtedness in issue.  Because the court resolves the rescission claim on other grounds, the court does not address this issue.

1   must credibly offer to return everything to the other party.

2   See Rodriguez v. Litton Loan Servicing LP, No. 2:09-cv-00029,

3   2009 U.S. Dist. LEXIS 43143, *9-*10 (E.D. Cal. May 11, 2009) (J.

4   England), Lopez v. Chase Home Financial, LLC, No. 09-cv-0449,

5   2009 WL 981676, (E.D. Cal., April 9, 2009) (J. O'Neill) (quoting

6   Fleming v. Kagan, 189 Cal. App. 2d 791, 796 (1961)), again with

7   leave to amend.  Accordingly, plaintiff's sixth cause of action,

8   for rescission of the loan, is dismissed as to MERS and EMC.

9   **B.   Non-misrepresentation Claims for Equitable Relief**

10      Plaintiff further seeks injunctive relief in her claims for

11  quiet title, unfair debt collection, violation of California

12  Civil Code § 2923.5, unfair competition, and declaratory

13  judgment.

14      **1.   Quiet Title**

15      Plaintiff's first cause of action is for quiet title

16  against all defendants.  MERS and EMC seek dismissal of this

17  claim on two grounds.  First, defendants argue that plaintiff

18  has not satisfied the pleading requirements for a claim to quiet

19  title under California law.  Second, defendants argue that

20  exhibits which this court may consider demonstrate that the

21  quiet title claim lacks merit.  The court rejects both arguments

22  for dismissal of this claim.

23      **a.   Pleading Requirements for California Quiet Title**

24          **Claims**

25      Under California law, a claim for quiet title must include

26  a) a description of the property, including both its legal

19

1  description and its street address, b) the title of the

2  plaintiff and the basis of the title, c) the adverse claims to

3  the title of the plaintiff, d) the dates as of which the

4  determination is sought, e) and a prayer for the determination

5  of the title of the plaintiff.  Cal. Code Civ. Pro. § 761.020.

6  Defendants argue that plaintiffs have not satisfied any of these

7  requirements.[12]

8      Plaintiff has satisfied the requirements of sections

9  761.020 (a), (b), (d) and (e).  The complaint adequately

10 identifies the property by address.  Compl. ¶ 1.  Plaintiff

11 alleges that she is the owner of the record of the property as

12 her basis for title.  Id. ¶ 23. Plaintiff identifies the date of

13 the filing of the complaint as the date for which determination

14 is sought. Id. ¶ 34. Plaintiff seeks a judicial declaration that

15 the title to the property is vested in plaintiff alone and that

16 defendants have no right to the property and should be forever

17 enjoined from asserting a right to the property.  Id.

18     As to subsection (c), identification of the adverse claims,

19 MERS and EMC argue that they do not have an adverse claim to the

20 title, and that plaintiff has failed to identify such an adverse

21 claim, because there has not been a trustee's sale and plaintiff

22

23     [12] Defendants also argue plaintiff has not complied with the
requirement in Cal. Civ. Code § 761.020 that the complaint in a
quiet title action be verified.  A party ordinarily verifies a

24 pleading by swearing to the truth of the matters alleged in a
pleading. 4 Witkin, California Procedure (4th ed.), Pleading § 420.

25 Plaintiff has included a verification page in the original
complaint swearing to the truth of the facts alleged. Compl. at p.

26 17. The court finds the complaint is sufficiently verified.

is still the holder of the legal title.  However, the right of
sale provided by the deed of trust is an interest in the
property.  In addition, while the right of sale is formally
lodged with the trustee, the beneficiaries have the power to
direct the trustee to exercise this right.  South Bay Building
Enterprises, Inc. v. Riviera Lend-Lease, Inc., 72 Cal. App. 4th
1111, 1120 (1999) ("When a debtor defaults on a secured real
property loan, the lender-beneficiary may institute nonjudicial
foreclosure proceedings to trigger a trustee's sale of the
property to satisfy the obligation."), Moeller v. Lien, 25 Cal.
App. 4th 822, 830 (1994) ("Upon default by the trustor [under a
deed of trust containing a power of sale], the beneficiary may
declare a default and proceed with a nonjudicial foreclosure
sale.").  This interest, the beneficiaries' power to cause a
sale of the property, is effectively a lien on the property.
Monterey S. P. P'ship v. W. L. Bangham, 49 Cal. 3d 454, 460
(1989).  Cal. Code Civ. Pro. § 760.010(a) provides that a lien
may properly be the subject of a quiet title action.  Plaintiff
has therefore alleged each of the elements of a quiet title
claim.

> **b.   Merits of Plaintiff's Quiet Title Claim**

Having clarified the interest challenged by plaintiff's
quiet title claim, the court turns to defendants' challenge to
the merits of that claim.  Plaintiff bases her claim on two
theories.

First, plaintiff argues that no one other than plaintiff

21

1  has a right to cause the subject property to be sold because the

2  loan and associated deed of trust should be rescinded.  However,

3  plaintiff's only claim for which rescission is an available

4  remedy is the claim under Cal. Civ. Code § 1689(b)(2).  Because

5  Greenpoint has not attacked the pleadings, the claim for

6  rescission is presently undisputed as to that party.

7      Second, plaintiff argues that even if some person has the

8  right to cause the property to be sold, defendants in this suit

9  are not that person, because "they are not the holders of the

10  note in due course or true beneficiaries under the deed of

11  trust."  Opp'n 6:15-16.  Plaintiff alleges that the obligation

12  under the promissory note has been assigned to a person not a

13  party to this suit.  None of the exhibits in this case speak

14  directly to the promissory note--all concern the deed of trust--

15  and defendants have not made any statement regarding who is the

16  current creditor.  Under California Civil Code section 2936,

17  "The assignment of a debt secured by mortgage carries with it

18  the security."  Similarly, under California Civil Code section

19  2932.5:

20          Where a power to sell real property is given
            to a mortgagee, or other encumbrancer, in an
21          instrument intended to secure the payment of
            money, the power is part of the security and
22          vests in any person who by assignment
            becomes entitled to payment of the money
23          secured by the instrument.

24  Thus, plaintiff contends when the alleged transfer of the

25  promissory note occurred, as a matter of law the beneficiary's

26  rights under the deed of trust were transferred as well,

1  regardless of whether the latter transfer was intended or

2  recorded.  Opp'n, 11.

3       Greenpoint's status as a creditor is key to defendants'

4  arguments that they do have the right to initiate a nonjudicial

5  foreclosure.  However, EMC and MERS have not addressed

6  plaintiff's allegation that an assignment of the promissory note

7  has occurred, such that Greenpoint is no longer the creditor.

8  Although it is not clear to the court that plaintiff's theory

9  has merit, MERS and EMC have not met their burden of showing

10 that plaintiff cannot succeed on this theory.

11      **2.   Unfair Debt Collection**

12      Plaintiff's seventh cause of action is brought against all

13 defendants, for violation of California's Rosenthal Fair Debt

14 Collection Practices Act, Cal. Civ. Code § 1788 *et seq.*, and the

15 Federal Fair Debt Collection Act, 15 U.S.C. § 1692 *et seq*.

16 Plaintiff alleges that "defendants caused significant damage to

17 plaintiff's credit history, by reporting past due payments even

18 though Plaintiff has been working in good faith to reasonably

19 modify loan payment terms in accordance with the received

20 instructions."  Compl. ¶ 65.  MERS and EMC argue for dismissal

21 of this claim on the ground that they are not "debt collectors"

22 subject to liability under either act, and on the ground that

23 foreclosure on the property is not a collection of debt.

24      As to the first argument, defendants offer no discussion

25 what it means to be a debt collector under either statute, or of

26 whether plaintiff's factual allegations fail to support the

1   inference that MERS and EMC are debt collectors.  Accordingly,

2   this argument does not meet defendants' burden of showing that

3   plaintiff has failed to state a claim for relief.

4        Defendants separately argue that their alleged reporting of

5   plaintiff's past-due status to credit reporting agencies is an

6   action undertaken in furtherance of foreclosure, and thereby not

7   debt collection activity.  Defendants rely on two cases.  The

8   first is Heinemann v. Jim Walter Homes, Inc., 47 F. Supp. 2d

9   716, 722 (N.D. W. Va. 1998), which held that "publication of the

10  notice of sale and the final trustees sale" of a mortgaged

11  property was not collection of a debt, and thus not within the

12  scope of the FDCPA.  Second is Hulse v. Ocwen Fed. Bank, FSB,

13  195 F. Supp. 2d 1188, 1204 (D. Or. 2002), which followed

14  Heinemann to conclude that "Foreclosing on a trust deed is

15  distinct from the collection of the obligation to pay money,"

16  such that "any actions taken . . . in pursuit of the actual

17  foreclosure may not be challenged as FDCPA violations."  Hulse

18  then held that the act of causing a trustee's notice of sale to

19  be filed could not support an FDCPA claim.  Id. at 1203-04.  The

20  conduct alleged here is factually distinct from that at issue in

21  these cases.  The purported debt collection activity in those

22  cases was the posting of a notice of sale and other activity

23  solely connected with foreclosure, whereas plaintiff's claim

24  here is based on reporting of default to credit reporting

25  agencies, an activity that might have some incidental connection

26  to foreclosure, but that is also squarely connected to debt

1  collection.  While Hulse and Heineman  held that an action's

2  connection with foreclosure is not sufficient to demonstrate

3  that the act is debt collection activity, defendants here argue

4  that a connection to foreclosure demonstrates that an act is not

5  debt collection activity.  These cases simply do not stand for

6  that proposition.

7      **3.   Violation of California Civil Code § 2923.5**

8      Plaintiff's eighth claim alleges that defendants violated

9  California Civil Code section 2923.5 by not attempting to

10  contact and negotiate a loan with plaintiff prior to filing the

11  notice of default.  Compl. ¶ 69.  SB 1137 has been codified as

12  California Civil Code sections 2923.5 and 2923.6.[13]

13      Section 2923.5(a)(2) provides that as a prerequisite to the

14  filing of a notice of default, a "mortgagee, beneficiary or

15  authorized agent" must "contact the borrower in person or by

16  telephone in order to assess the borrower's financial situation

17  and explore options for the borrower to avoid foreclosure."

18  Cal. Civ. Code § 2923.5(a)(2).  EMC prepared a notice of

19  compliance with section 2923.5 which was attached to the notice

20  of default, and which states that EMC attempted to contact

21

22      [13] Plaintiff's complaint also alleges that defendants violated
   Senate Bill 1137, which has been codified as Cal. Civ. Code §§
23  2923.5 and 2923.6, although plaintiff's complaint contains no
   allegations pertaining to § 2923.6.  In her opposition to the
24  present motion, plaintiff alleges that defendants also violated §
   2923.6 by failing to reach an agreement with plaintiff
25  renegotiating the loan.  However, § 2923.6 only imposes a duty on
   members of the loan pool to each other.  Fuentes v. Duetsche Bank,
26  No. 09 CV 502 JM(PCL), 2009 WL 1971610, *2 (S.D. Cal. July 8,
   2009).

1  plaintiff.  Defs.' RFJN Ex. 4.  However, plaintiff specifically

2  alleges that this notice of compliance is untruthful, and that

3  no effort to contact plaintiff was made.  Compl. ¶ 11.  For

4  purposes of the present motion, the court must credit

5  plaintiff's allegation.

6      Defendants also argue that section 2923.5 does not provide

7  for a private right of action.  Section 2923.5 does not

8  explicitly provide such a right.  Under California law, an

9  implied right of action exists only when the legislature so

10 intended.  <u>Moradi-Shalal v. Fireman's Fund Ins. Companies</u>, 46

11 Cal. 3d 287, 305 (1988).  Plaintiff in this case has not

12 attempted to show that the legislature had this intention.

13 Instead, plaintiff concedes that no private right of action

14 exists, and attempts to enforce section 2923.5 through her claim

15 brought under California's unfair competition law.  That claim

16 is discussed below.  In light of plaintiff's concession, this

17 court will not independently evaluate the legislature's intent.

18 The court assumes for purposes of this case that section 2923.5

19 does not provide a private right of action.

20     **4.   California's Unfair Competition Law**

21     Plaintiff's eleventh claim is for unfair competition in

22 violation of Cal. Bus. & Prof. Code section 17200.  This statute

23 proscribes "unlawful, unfair, or fraudulent business acts."  <u>Id.</u>

24 Here, plaintiff alleges that defendants acted unlawfully, as

25 specified in plaintiff's other claims; plaintiff does not

26 otherwise allege that defendants' acts were unfair or

fraudulent.  Compl. ¶¶ 81-82, <u>see also</u> Opp'n at 28.

Defendants raise two challenges to this claim.  First, they argue that plaintiff does not satisfy the statutory standing requirements.  The UCL provides a private right of action to "any person who has suffered injury in fact and has lost money or property as a result of . . . unfair competition."  Cal. Bus. & Prof. Code § 17204.  <u>See also</u> <u>Californians for Disability Rights v. Mervyn's, LLC</u>, 39 Cal. 4th 223, 228 (2006).  At least one claim, her unfair debt collection claim, alleges that plaintiff has suffered financial loss as a result of damage to her credit history.  The parties have not addressed whether plaintiff's other alleged injuries satisfy section 17204, or whether in an unfair competition claim for which standing is provided by the unfair debt collection injury plaintiff may attain the full range of remedies she seeks on this claim, and the court need not address these issues in disposing of this motion.

Defendants also argue that plaintiff's unfair competition claim fails because plaintiff has not alleged a "pattern of behavior" or a "course of conduct" constituting a business practice.  This argument relies on a prior version of the unfair competition statute.  In 1992, the Legislature amended section 17200 to expand the definition of unfair competition to include "any unlawful, unfair, or fraudulent business _act_ or practice." (emphasis added).  The 1992 amendments thereby overruled the cases defendants rely upon that limited the statute's

1  application to a "pattern of conduct".  See Stop Youth

2  Addiction, Inc. v. Lucky Stores, Inc., 17 Cal. 4th 553, 570

3  (1998) (quoting State of California ex rel. Van De Kamp v.

4  Texaco, Inc., 46 Cal. 3d 1147, 1169-170 (1988)). The California

5  Supreme Court has interpreted the 1992 amendment as overruling

6  that part of Van De Kamp that interpreted the statute to require

7  more than a single "act." United Farm Workers of America, AFL-

8  CIO v. Dutra Farms, 83 Cal. App. 4th 1146, 1163 (2000) (citing

9  Stop Youth Addiction, Inc., 17 Cal. 4th at 570). Accordingly,

10 under the current version of the statute, even a single act may

11 create liability. United Farm Workers of America, AFL-CIO, 83

12 Cal. App. 4th at 1163 (see CRST Van Expedited, Inc. v. Werner

13 Enterprises, Inc., 479 F. 3d 1099, 1107 (2007) ("a business act

14 or practice need not be an ongoing pattern of conduct").

15      Accordingly, defendants' motion to dismiss is denied as to

16 plaintiff's unfair competition claim.

17      **5.   Declaratory Relief**

18      Plaintiff's twelfth cause of action is for declaratory and

19 injunctive relief.  Plaintiff seeks "a declaration as to the

20 validity of the purchase money loan agreement, loan transaction,

21 and Defendants' right to proceed with the non-judicial

22 foreclosure of the Premises."  Compl. ¶ 90.  Plaintiff bases her

23 claim to declaratory and injunctive relief on her other eleven

24 causes of action, and specifically on the grounds that the loan

25 and deed of trust are void, and that defendants "might not be

26 actual holder[s] of the original note of the Premises." Compl.

28

1   ¶¶ 88-89.  Defendants argue that because all of plaintiff's

2   other claims should be dismissed, plaintiff is not entitled to

3   declaratory relief.  Because the court has not dismissed various

4   causes of action, defendants' motion to dismiss is denied as to

5   plaintiff's claim for declaratory relief.[14]

6   **C.   Non-misrepresentation Claims for Damages**

7        **1.   Truth in Lending Act (TILA)**

8        Plaintiff's second claim is for a violation of the Truth in

9   Lending Act, 15 U.S.C. § 1639.  This claim is alleged against

10  Greenpoint and EMC but not MERS.  EMC argues that this claim

11  should be dismissed against EMC for two reasons.

12              **a.   Whether EMC Is An Assignee under TILA**

13       TILA imposes liability for failure to make initial

14  disclosures only on the original creditor and that creditor's

15  assignees.  15 U.S.C. §§ 1640, 1641.  EMC argues that it is only

16  a servicer and not an assignee subject to such liability.  TILA

17  explicitly excludes most servicers in the position EMC contends

18  it occupies from the definition of "assignees."  15 U.S.C. §

19  1641(f).  To be liable as an assignee, the servicer must own the

20  obligation, and the servicer's ownership must not be based on

21  _____

22       [14]  In opposing the present motion, plaintiff additionally
     argued that the Notice of Default, Notice of Sale and Substitution
23   of Trustee filed by defendants violated statutory procedural
     requirements, namely California Civil Code sections 2924,
24   2924f(b)(1), and 2934a, by failing to provide specific required
     information.  Although plaintiff did not explain how these
25   allegations pertain to any of plaintiff's other claims, these
     allegations, if included in an amended complaint, may provide an
26   independent ground for declaratory judgment.

assignment from another creditor made solely for administrative

convenience in servicing the obligation.  §§ 1641(f)(1)-(2); see

also Hubbard v. Ameriquest Mortg. Co., No. 05-CV-389, 2008 U.S.

Dist. LEXIS 75799, *9-*10 (N.D. Ill. Sept. 30, 2008).  Here,

plaintiff alleges that the loan has been assigned to EMC.

Compl. ¶ 19.  Rather than arguing that any assignment was made

solely for the purposes of administrative convenience, EMC

argues that contrary to plaintiff's allegation, EMC has not

taken assignment of the loan.

Given that the Notice of Default prepared by defendants

appears to identify EMC as the actual beneficiary under the deed

of trust, the judicially noticeable evidence is ambiguous, and

must be interpreted in favor of plaintiff.  Accordingly, this

argument for dismissal fails.

**b.   Statute of Limitations under TILA**

EMC argues that plaintiff's TILA claim was filed after the

expiration of TILA's one-year statute of limitations for claims

for civil damages.  15 U.S.C. § 1640(e).  Plaintiff's TILA claim

is based on a failure to disclose the method that would be used

to calculate interest, Compl. ¶ 36, failure to disclose that

interest was added to principal during the initial period of

fixed payments, Id. at ¶ 13, basing the loan on an inflated

appraisal, Id. at ¶ 37, failure to disclose that plaintiff's

income would be insufficient to pay the loan, Id. at ¶ 37,

failure to provide plaintiff with information regarding

alternative possible loan terms, Id. at ¶ 37, and originating

the loan in violation of their unspecified underwriting

standards, Id. at ¶ 38.  All of these allegations pertain to

conduct at the time the loan was originated, in late 2005.

Plaintiff's complaint was filed on April 20, 2009, over three

years after the alleged conduct.

Plaintiff responds that her TILA claim is not barred by

TILA's one-year statute of limitations because plaintiff is

entitled to either equitable tolling or equitable estoppel.[15]

The Ninth Circuit has held that TILA's limitations period may be

tolled:

> the limitations period in Section 1640(e)
> runs from the date of consummation of the
> transaction but that the doctrine of
> equitable tolling may, in the appropriate
> circumstances, suspend the limitations
> period until the borrower discovers or had
> reasonable opportunity to discover the fraud
> or nondisclosures that form the basis of the
> TILA action.

King v. California, 784 F.2d 910, 915 (9th Cir. 1986).  District

courts applying King have held that the related doctrine of

equitable estoppel is also available for TILA claims.  See,

e.g., Ayala v. World Sav. Bank, FSB, 616 F. Supp. 2d 1007 (C.D.

Cal. 2009). "'[E]quitable estoppel applies when a plaintiff who

knows of his cause of action reasonably relies on the

defendant's statements or conduct in failing to bring suit.'"

Socop-Gonzalez v. INS, 272 F.3d 1176, 1184 (9th Cir. 2001) (en

banc) (quoting Stitt v. Williams, 919 F.2d 516, 522 (9th Cir.

---

[15] Although plaintiff's memorandum refers only to equitable
tolling, her arguments also implicate equitable estoppel.

1   1990)).

2           A finding of equitable estoppel rests on the
            consideration of a non-exhaustive list of
3           factors, including: (1) the plaintiff's
            actual and reasonable reliance on the
4           defendant's conduct or representations, (2)
            evidence of improper purpose on the part of
5           the defendant, or of the defendant's actual
            or constructive knowledge of the deceptive
6           nature of its conduct, and (3) the extent to
            which the purposes of the limitations period
7           have been satisfied.

8   Santa Maria v. Pacific Bell, 202 F.3d 1170, 1176 (9th Cir.

9   2000), overruled on other grounds by Socop-Gonzales, 272 F.3d

10  1176.  While a plaintiff need not specifically allege equitable

11  tolling or estoppel in a complaint, the complaint must provide a

12  factual basis to support either theory.  Cervantes v. City of

13  San Diego, 5 F.3d 1273, 1277 (9th Cir. 1993).

14         Plaintiff's complaint alleges that she discovered that the

15  interest rate was not fixed and that interest had been added to

16  the principal during the period of initial payments "at the time

17  when her fixed payment period expired," although plaintiff does

18  not allege when that time occurred.  Compl. ¶ 13.  However,

19  plaintiff has made no allegations concerning whether she had

20  "reasonable opportunity" to discover the basis of her TILA claim

21  at an earlier point, King, 784 F.2d at 915, i.e., whether the

22  basis for these claims could have been discovered through the

23  exercise of reasonable diligence, Socop-Gonzales, 272 F.3d at

24  1184-85.

25         Plaintiff also argues that the statute of limitations

26  should not bar her TILA claim because of defendants' misconduct.

                                    32

1    An argument for equitable estoppel requires "some active conduct
2    by the defendant 'above and beyond the wrongdoing upon which the
3    plaintiff's claim is filed, to prevent the plaintiff from suing
4    in time.'"  Lukovsky v. City & County of San Francisco, 535 F.3d
5    1044, 1052 (9th Cir. 2008) (quoting Guerrero v. Gates, 442 F.3d
6    697, 706 (9th Cir. 2006)).  The complaint does not identify any
7    separate misconduct that would have this effect. The complaint
8    contains no allegations of such separate misconduct.

9        Accordingly, plaintiff's TILA claim is dismissed with leave
10   to amend.

11       **2.   Real Estate Settlement Procedures Act (RESPA**)

12       Plaintiff's third claim is that all defendants violated the
13   Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq*.
14   Defendants allegedly violated RESPA by "accepting fees,
15   kickbacks, or other things of value from the other Defendants"
16   as compensation for referrals.  Compl. ¶ 41.

17       RESPA also imposes a one-year statute of limitations. 12
18   U.S.C. § 2614.  Like plaintiff's TILA claim, this cause of
19   action also accrued at the time the loan was entered, in late
20   2005.  Compl. ¶ 41.  Plaintiff again argues that her claim is
21   timely because of equitable tolling.

22       While the Ninth Circuit has not decided whether the RESPA
23   statute of limitations is jurisdictional, and thus whether
24   equitable tolling or estoppel are available under RESPA,
25   district courts in this circuit have held that tolling is
26   available.  See Brewer v. IndyMac Bank, 609 F. Supp. 2d 1104,

33

1118 (E.D. Cal. 2009) (following <u>Lawyers Title Ins. Corporation</u>
<u>v. Dearborn Title Corp.</u>, 118 F.3d 1157, 1166-67 (7th Cir.
1997)), <u>Kay v. Wells Fargo & Co., N.A.</u>, No. 07-01351, 2007 WL
2141292 (N.D. Cal. July 24, 2007), <u>Blaylock v. First Am. Title</u>
<u>Ins. Co.</u>, 504 F. Supp. 2d 1091, 1106 (W.D. Wash. 2007); <u>but see</u>
<u>Hardin v. City Title & Escrow Co.</u>, 797 F.2d 1037, 1040-41 (D.C.
Cir. 1986) (holding that the RESPA statute of limitations is
jurisdictional and not subject to equitable tolling).
<u>Brewer</u> held that the <u>King</u> test for equitable tolling under TILA
also governed equitable tolling under RESPA.  609 F. Supp. 2d.
at 1118 (citing <u>King</u>, 784 F.2d at 915).[16]

Plaintiff argues that the RESPA statute of limitations
should be tolled for the same reasons provided for tolling of
the TILA limitations period, and plaintiff provides no further
allegations or argument on this issue.  As explained above,
plaintiff has not provided factual allegations supporting such
tolling.

Defendants alternatively argue that plaintiff's RESPA claim
fails because plaintiff has failed to plead certain other
elements of a RESPA claim.  First, defendants contend that
plaintiff failed to allege that any fees paid were not for
services actually rendered.  While plaintiff disputes that such

---

[16] The court notes that the <u>King</u> phrasing of the test for
equitable tolling mirrors the tests used by the Ninth Circuit in
in other contexts.  <u>See, e.g.</u>, <u>Santa Maria</u>, 202 F.3d at 1178 (ADA
claim), <u>Stoll v. Runyon</u>, 165 F.3d 1238, 1242 (9th Cir. 1999) (Title
VII).

1  an allegation is required, the complaint specifically alleges

2  that fees, kickbacks, etc. were made in exchange for referrals,

3  and by implication, not for services.  Second, defendants

4  contend that plaintiff must specifically allege pecuniary loss,

5  under 12 U.S.C. § 2605.  As the cases cited by defendants

6  demonstrate, courts have interpreted this requirement liberally.

7  See Hutchinson v. Del. Sav. Bank FSB, 410 F. Supp. 2d 374, 383

8  (D.N.J. 2006), Cortez v. Keystone Bank, Inc., No. 98-2457, 2000

9  WL 536666, 2000 U.S. Dist. LEXIS 5705, *38-40 (E.D. Pa. May 2,

10  2000).  Here, where plaintiff alleges that she was required to

11  pay a referral fee that was prohibited under RESPA, plaintiff

12  has adequately alleged pecuniary loss.

13      Accordingly, plaintiff's RESPA claim is dismissed with

14  leave to amend with facts supporting equitable tolling.

15          **3.   Duty of Good Faith and Fair Dealing**

16      Plaintiff's tenth claim is for breach of the implied

17  covenant of good faith and fair dealing.  Plaintiff alleges that

18  defendants breached this covenant by intentionally forcing

19  plaintiff into default and foreclosure by "depriving Plaintiff

20  of an opportunity to properly review, analyze and negotiate the

21  loan terms, and ultimately loan modification terms intentionally

22  forcing Plaintiff into default and eventually foreclosure

23  proceedings." [sic] Compl. ¶ 77.

24      A claim for breach of the implied covenant depends upon the

25  existence of an underlying contract.  Insofar as this claim is

26  predicated on conduct that occurred prior to completion of the

1  contract, it therefore fails as to all defendants, because no
2  contract existed at that point.

3       Nonetheless, plaintiff's complaint explicitly states that
4  this claim is also predicated on conduct occurring after the
5  loan was closed, i.e., once a contract existed.  Compl. ¶ 77.
6  The only conduct enumerated in this claim that could have
7  occurred after this point is the deprivation of an opportunity
8  to review loan modification terms and the act of intentionally
9  forcing plaintiff into default.  Id.

10      EMC and MERS argue that even insofar as this claim is
11 predicated on activity occurring after the initial contract was
12 entered, plaintiff has not alleged the existence of a contract
13 between plaintiff and EMC or MERS.  However, plaintiff has
14 alleged that the promissory note has been assigned to EMC, and
15 that MERS is a party to the deed of trust.  EMC and MERS have
16 not explained why these instruments do not constitute contracts.

17      Although plaintiff's allegations regarding loan
18 modification and intentionally forcing plaintiff into
19 foreclosure provide few details, these allegations suffice to
20 state a claim for breach of the covenant of good faith and fair
21 dealing that informs defendants of its basis.  Contrary to
22 defendants' argument, plaintiff does not merely allege the legal
23 conclusion that a breach of the covenant occurred.  Instead,
24 plaintiff identifies the type of acts that constituted the
25 breach.

26      Therefore, defendant's motion to dismiss plaintiff's claim

for breach of implied covenant of good faith and fair dealing is
denied.

### IV. CONCLUSION

For the reasons stated above, defendants' motion to dismiss
is GRANTED IN PART.

    1.    The motion is GRANTED as to the following claims as to
defendants MERS and EMC, which are DISMISSED WITHOUT
PREJUDICE:

        a.    The second claim, for violation of TILA,

        b.    The third claim, for violation of RESPA,

        c.    The fourth claim, for fraud,

        d.    The fifth claim, for negligent misrepresentation,

        e.    The sixth claim, for rescission based on fraud,

        f.    The eighth claim, for violation of Cal. Civ. Code
§ 2923.5,

        g.    The ninth claim, for civil conspiracy.

    2.    The motion is DENIED as to the following claims:

        a.    The first claim, for quiet title,

        b.    The seventh claim, for unfair debt collection,

        c.    The tenth claim, for breach of the implied
covenant of good faith and fair dealing,

        d.    The eleventh claim, for unfair competition,

        e.    The twelfth claim, for declaratory and injunctive
relief.

Plaintiff is GRANTED twenty days to file an amended
complaint.

1    IT IS SO ORDERED.

2    DATED:  September 3, 2009.

3

4

5                         LAWRENCE K. KARLTON
                          SENIOR JUDGE
6                         UNITED STATES DISTRICT COURT

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26