| | |
|---|---|
| Oxana Kozlov, Esq. (SBN 209210)<br>649 Dunholme Way<br>Sunnyvale, CA 94087<br>Telephone: (650) 814-7708<br><br>Attorney for Plaintiff<br>Elena Yulaeva | |

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELENA YULAEVA<br><br>              Plaintiff,<br><br>   v.<br><br>GREENPOINT MORTGAGE FUNDING, INC.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; EMC MORTGAGE CORPORATION; and DOES 1 through 10, inclusive,<br><br>              Defendants. | CASE NO. 09-cv-01504-LKK-KJM<br><br>**(JURY TRIAL REQUESTED)**<br><br>**HONORABLE LAWRENCE K. KARLTON**<br><br>OPPOSITION TO MOTION TO DISMISS THE FIRST AMENDED COMPLAINT FILED BY DEFENDANTS MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; AND EMC MORTGAGE CORPORATION;<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSION TO DEFENDANTS' MOTION TO DISMISS.<br><br>Hearing Date: December 7, 2009<br>Time: 10:00 a.m.<br>CTRM: "4"<br><br>Action Filed: April 20, 2009 |

      Plaintiff, ELENA YULAEVA ("Plaintiff") respectfully submits the following opposition ("Opposition") to the Motion to Dismiss ("Motion to Dismiss") the First Amended Complaint filed by Defendants MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; and EMC MORTGAGE CORPORATION ("Defendants") and supporting Memorandum of Points and Authorities.

In the Motion to Dismiss Defendants move to dismiss certain causes of actions in the Plaintiff's First Amended Complaint ("Complaint") with respect to which the Plaintiff was granted a leave to amend pursuant to this Court's Order, dated September 3, 2009 (the "Court Order"). Defendants' motion to dismiss the original complaint was denied by the same Court Order as to five other causes of action: Quite Title, Unfair Debt Collection, Breach of Implied Covenant of Good Faith and Fair Dealing, Unfair Competition and Declaratory and Injunctive Relief.

As discussed in detail in the Memorandum of Points and Authorities, Defendants' Motion to Dismiss has no merit as to the remaining causes of actions and should be denied in its entirety because Plaintiff has sufficiently pled that relief can be granted on each and every one of the causes of actions that were challenged in the Motion to Dismiss. Plaintiff will address all arguments presented in the Motion to Dismiss in their order in the Memorandum of Points and Authorities.

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO FDEFENDANTS' MOTION TO DISMISS

## I. SUMMARY OF ARGUMENT: DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED IN ITS ENTIRETY

Defendants' Motion to Dismiss should be denied in its entirety because Plaintiff has sufficiently pled that relief can be granted on each and every one of the causes of action addressed in the Motion to Dismiss. Federal Rule of Civ. Procedure 12(b) (6) provides for dismissal if a Plaintiff fails to state a claim upon which relief can be granted. A complaint should not be dismissed, however, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief." *Housley v. U. S.,* 35 F.3d 400, 401 (9$_{th}$ Cir. Nev. 1994). "Moreover, all allegations of material fact in the complaint are taken as true and construed in the light most favorable to plaintiff." *Argabright v. United States*, 35 F.3d 1476, 1479 (9$_{th}$ Cir. 1996). As discussed below, the Complaint satisfies the requirements of the federal rules and thus the Motion to Dismiss should be denied.

## II. STATEMENT OF FACTS

In or around November 2005, Plaintiff entered into an explicit contract with Defendant Greenpoint Mortgage Funding Inc. ("Greenpoint"), whereby Plaintiff obtained a negative amortization loan to purchase her home located at 10178 Clarina Way, Elk Grove, California 95758 ("Subject Property"). On information and belief, the contract was later assigned to EMC Mortgage Corporation ("EMC"), the fact that is not disputed by Defendants in the Motion to Dismiss.

As clearly alleged in the Complaint, Greenpoint or its agents failed to verify Plaintiff's income. As a result, the application that Plaintiff signed at close did not accurately reflect her income, which she did not realize until after she was able to review the documents much later, only after the dispute regarding loan modification with Defendant EMC has arisen a few months back. Greenpoint failed to provide Plaintiff with the necessary disclosures, as required under the Truth in Lending Act and Real Estate Settlement Procedures Act ("TILA"). In particular, at no time did

1  Greenpoint and its agents explained or disclosed to Plaintiff that her interest rate will not be fixed
2  for the same period of time as her low introductory payment (as a matter of fact, the introductory
3  interest was presented to be 2% for the first 360 months on her loan application, as Plaintiff was
4  recently been able to confirm), and that all of this constantly changing unpaid interest will be
5  added to the principle balance.  As a result, Plaintiff suffered a real "payment shock" at the time
6  when her fixed payment period expired, at which time she attempted to obtain a loan modification,
7  all to no avail.  EMC and MERS participated in the aforementioned fraud through their continued
8  non-disclosures.  Moreover, as was admitted by the Defendants, the note was originated by
9  Greenpoint from the very beginning for a purpose of securitization and resale of the open market.

As a result of Defendants fraud, breach of fiduciary duty, and unfair business practices, a Notice of Default ("NOD") and Notice of Trustee Sale ("NOT") were unlawfully recorded in Sacramento County on the Subject Property.  Under the recorded NOS, which was recorded on May 18, 2009, with the Sacramento County Recorder's Office as instrument No 2090518, Page 0454 and submitted for this Court's judicial notice in this action, foreclosure sale was scheduled for June 4, 2009, the fact that for some unclear reason is now specifically misrepresented in the Motion to Dismiss (Defendants now claim that no NOS was ever recorded).

Plaintiff mailed the Qualified Written Request under RESPA to Defendants on or about April 10, 2009, in an attempt to obtain information regarding her loan, in particular the name of the current holder of the Note.  Plaintiff is yet to receive the response to her Qualified Written Request after more than half-a-year after the request was sent.

### III. WRONFFULL FORECLOSURE CAUSE OF ACTION SHOULD NOT BE DISMISSED

Plaintiff sufficiently alleges the facts underlying this cause of action and none of the arguments advanced in the Motion to Dismiss have any merit.  As a matter of fact, the arguments advanced in the Motion to Dismiss contain direct misrepresentations, admissions of the validity of the cause of action and are borderline frivolous.  These arguments will be addressed in the order of their importance.

*A. Defendants Are Not Authorized to Initiate Foreclosure Proceedings*.

The non-judicial foreclosure can be initiated by 'the lender, the trustee, the beneficiary, or any of their authorized agents" under Civil Code Sections 2924 through 2924k. Having previously admitted that Defendants are not "the lender, the trustee or the beneficiary" Defendants now turn to an alternative argument that **Greenpoint as a lender has the right to initiate** the foreclosure **trough its purported authorized agents MERS and servicer EMC** (See Motion to Dismiss, page 6, lines 5-6). This argument is without any merit.

First, Greenpoint is no longer the lender and nothing in the code gives right to initiate foreclosure to an original lender that has long transferred/sold the loan and thus no longer owns it. This issue was already addressed in the Court Order where the Court held that "Greenpoint's status as a creditor is key to defendants' arguments that they do have the right to initiate a nonjudicial foreclosure. However, EMC and MERS have not addressed plaintiff's allegation that an assignment of the promissory note has occurred such as Greenpoint is no longer the creditor…MERS and EMC have not met their burden of showing that plaintiff cannot succeed on this theory." The Motion to Dismiss does nothing to address the issue. However, by now Greenpoint made its appearance in this action and specifically admitted in its own motion to dismiss that "GPM played no role in the foreclosure proceedings… and therefore could not have intentinally forced plaintiff into default." (See for example page 11, lines 18-19 of the Greenpoint Motion to Dismiss the First Amended Compalint). Thus, it is undisputed that Greenpoint is not the lender authorized to initiate foreclosure under California law and the fact that at some point MERS was its nominee is simply irrelevant.

Second, as Greenpoint is not currently a party that is authorized to initiate the foreclosure, to have the right to initiate the foreclosure on behalf of the current lender or beneficiary, EMC and/or MERS has to be an authorized agent of such lender/beneficiary. The identity of such beneficiary is still unknown (and was moreover intentionally not disclosed to Plaintiff even in spite of her QWR or in this action) and no showing has been made that either of the Defendants are in any way authorized to serve as agents of such unknown beneficiary(ies). EMC was not a party to a deed of trust and thus it is not clear what authority it might have and on whose behalf.

With respect to MERS a special review of the MERS role in foreclosure proceedings is in order and is provided below.

The description of how MERS works is provided in particular on the MERS website:

> "On MERS loans, MERS will show as the beneficiary of record. Foreclosures should be commenced in the name of MERS. To effectuate this process, MERS has allowed each servicer to choose a select number of its own employees to act as officers for MERS. Through this process, appropriate documents may be executed at the servicer's site on behalf of MERS by the same servicing employee that signs foreclosure documents for non-MERS loans. Until the time of sale, the foreclosure is handled in same manner as non-MERS foreclosures. At the time of sale, if the property reverts, the Trustee's Deed Upon Sale will follow a different procedure. Since MERS acts as nominee for the true beneficiary, it is important that the Trustee's Deed Upon Sale be made in the name of the true beneficiary and not MERS. ***Your title company or MERS officer can easily determine the true beneficiary***. Title companies have indicated that they will insure subsequent title when these procedures are followed."

What this means is that on its own website MERS admits that it names people to sign documents in the name of MERS. Often, these are servicers or title company employees or others that have no knowledge of the actual loan and whether it is in default or not. Even worse, MERS admits that it is not the true beneficiary of the loan. In fact, it is likely that MERS not only is not a true beneficiary, but has ***no knowledge of the true beneficiary*** of the loan for whom it is representing to be in an "agency" relationship. MERS admits to this when it says "***Your title company or MERS officer (i.e. employees of a servicer or title company acting as MERS' agents) can easily determine the true beneficiary***.

As the current case demonstrates apparently the process of determining the true beneficiary is not as easy as it is presented on the MERS' website as so far Defendants repeatedly failed to disclose the name of the true beneficiary in spite of Plaintiffs' RESPA request or otherwise.

To further reinforce that MERS is not the true beneficiary of the loan, one need only look at the following Nevada Bankruptcy case, *Hawkins, Case No. BK-S-07-13593-LBR (Bankr.Nev. 3/31/2009) (Bankr.Nev., 2009):*

> A "beneficiary" is defined as "one designated to benefit from an appointment, disposition, or assignment . . . or to receive something as a result of a legal arrangement or instrument." BLACK'S LAW DICTIONARY 165 (8th ed. 2004). But it is obvious from the MERS' "Terms and Conditions" that MERS is not a beneficiary as it has no rights whatsoever to any payments, to any servicing rights,

> or to any of the properties secured by the loans. ***To reverse an old adage, if it doesn't walk like a duck, talk like a duck, and quack like a duck, then it's not a duck***.
> (emphasis added).

With respect to the alleged agency (nominee) status of MERS and its right to initiate the foreclosure proceedings at issue as an authorized agent, a number of other recent cases are very instructive. In particular, in one of the most recent court decision Judge Rosen wrote:

> The relationship that MERS has to [Bank] is more akin to that of a straw man than to a party possessing all the rights given a buyer… What meaning is this court to attach to MERS's designation as nominee for Millennia [Mortgage Corp.]? The parties appear to have defined the word in much the same way that **the blind men of Indian legend described an elephant -- their description depended on which part they were touching at any given time**.
> (emphasis added). *Landmark National Bank v. Boyd A. Kessler, Kan 2009*, No. 98,489.

Defendant MERS clearly proves Judge Rosen's point by assigning MERS quite contradictory roles over the course of this action. Even in the Motion to Dismiss MERS is called both an agent and a beneficiary under the Deed of Trust. Putting aside the issue that naming MERS as both beneficiary and nominee for a true beneficiary in one instrument is a legal absurdity by itself, especially in light of the fact that there is another beneficiary (Lender) and another holder of a legal title (Trustee) under the Deed of Trust, the reference to this confusing terminology just for convenience and sake of one separate argument in the Defendants' pleadings in this action is a perfect example of "touching" of different parts of "the elephant" at different times.

There is no shred of evidence provided in the Motion to Dismiss to show that MERS can be an agent for a current unknown beneficiary and Defendants' reliance on the Deed of Trust is simply misplaced. The basic tenet of the agency law is that the agency ***cannot be passed to an unknown successor by way of contractual language in the original agreement***. The agency relationship has to be established between the actual parties. *See* for example *In Re Vargas,* 396 B.R. 511, 516-17:"[i]f FHM has transferred the note, MERS is no longer an authorized agent of the holder **unless it has a separate agency contract** with the new undisclosed principal."

Thus neither MERS nor EMC had a legal right to initiate the foreclosure by recording the NOD. The NOD is a legal nullity under the California law and Plaintiff respectfully asks this Court to declare the NOD invalid and set it aside.

### B. Notice of Sale was Improperly Recorded.

The issue of why the NOS and the Substitution of Trustee were not properly recorded is addressed at length in the Plaintiff's opposition to the first motion to dismiss and later in the Complaint and will not be repeated here again. Defendants' assertion that no NOS was recorded is, however, a clear misrepresentation as the NOS was recorded on May 18, 2009, with the Sacramento County Recorder's Office as instrument No 2090518, Page 0454 and submitted for this Court's judicial notice in this action.

### C. The Claim is Not Premature

The argument that Wrongful Foreclosure action is premature is simply absurd. The Subject Property was scheduled for foreclosure in accordance with the recorded NOS more than half-a-year ago and was stopped only because this action was initiated. The foreclosure is wrongful when it is initiated by the parties who have no right to initiate such foreclosure and who proceed with foreclosure in gross violation of the California law. As it happens nowadays, beneficiaries most often "miraculously" appear on record at the very last moment or even well after foreclosure through the recordation of defective and often forged assignments. Whether such alleged beneficiary is a true beneficiary and the delay was caused by administrative issues or such beneficiary was simply randomly assigned by MERS and its conspirators as a part of the foreclosure process remains subject to speculation and this issue is discussed in many publications on this subject. Regardless, as long as the foreclosure is not initiated by the real party in interest it is wrongful and unlawful and Plaintiff does not have to wait to lose her house to initiate this action.

To summarize, Plaintiff respectfully asks this Court to set aside the invalid Notice of Sale and declare the foreclosure proceedings wrongful. Plaintiff further respectfully prays for injunctive relieve that would prevent Defendants from initiation of the foreclosure proceedings for as long as no real party in interest is established by clear and convincing evidence - by clear chain of duly acknowledged and recorded assignments of the Note and Deed of Trust at issue.

## IV. CAUSES OF ACTION BASED ON VIOLATION OF TRUTH IN LENDING ACT AND RESPA SHOULD NOT BE DISMISSED

The issue that Plaintiff was asked to amend pursuant to the Court Order was the issue of

the statute of limitations and equitable tolling, thus other arguments raised in the Motion to Dismiss will not be addressed as they are simply a repetition of what was already addressed and resolved before.  In particular, Defendant's argument that it is not an assignee, once again raised in the Motion to Dismiss was already disposed of in the Court Order as failing.

With respect to the statute of limitation, the Complaint clearly alleges that the claim was brought within one year after Plaintiff discovered (or had a reason to discover) the TILA and RESPA violations.  With respect to Plaintiff's alleged duty of due diligence to discover such violations earlier, the growing number of courts hold that when the Plaintiff is not fluent in English, such as the case here, equitable tolling is justified as it would take borrower longer to discover any TILA and/or RESPA violation in English documents.  The recent order of another California District Court (Southern) in case of Petra Pelayo v. Home Capital Funding, Your Money Store, **EMC Mortgage Corporation**, et. al. (No. 08-CV-2030 IEG) is very instructive.  In that case the issue of equitable tolling of TILA and RESPA claims was resolved in favor of plaintiff under similar circumstances with language issue cited as the main factor in support of the decision.  Incidentally, the same case also found EMC's apparently similar argument that it is not an assignee not convincing.

With respect to the RESPA violation claim, Defendants in addition simply fail to address the issue of EMC's failure to respond to the Plaintiff's QWR which was sent to EMC less than a year ago.  This RESPA violation is clearly not barred by any statute of limitations.  EMC's failure to respond to Plaintiff's QWR is critical in this case as one of the most important issues the QWR was seeking to address is the identity of the current beneficiary under the Note at issue.

For all these reasons, Defendants' Motion to Dismiss as to these causes of actions shall fail.

**V. INTENTIONAL AND NEGLIGENT MISREPRESENTATION CAUSES OF ACTION SHOULD NOT BE DISMISSED**

As it is correctly presented in the Motion to Dismiss, Plaintiff based her revised claim on the theory of conspiracy.  The claim that Plaintiff has to allege who, when and in what capacity or role made certain misrepresentation under the circumstances and after 4 years after the loan

origination in effect makes it impossible for any similarly situated plaintiff to pass muster under this cause of action.  Plaintiff simply was not provided with any documents at the closing that would help her now to reconstruct the history of her loan origination.  The loan transaction was conducted by some notary public whose name she has no recollection of, through the end agent/broker potentially non-existing or bankrupt and with whom she had no further contacts.  In fact the only contact that she recalls of was her submission of the application to Defendant Greenpoint, which apparently was modified and/or forged along the way.  The documents were presented to her by Defendant Greenpoint but how would she know who was involved and in what capacity in the preparation of the loan documents?

As millions of other borrowers around the country Plaintiff had to deal with a well-planned scheme that was developed and applied to many borrowers and intentionally designed to confuse the borrowers and prevent them to later alleging fraud (or other for that matter) claims, among other things.  **There is simply no good law that would apply** to what is happening right now and the new law is being made in the courtrooms every day.  The Plaintiff (as well as many other plaintiffs in similar cases) has to rely on "constructive fraud" theory rather than on the actually fraud theory due to the complexity of the transactions involved.

Plaintiff hereby submits that her claims of fraudulent conduct are not necessarily premised on just "actual fraud" theory, but rather on "constructive fraud" theory.  "Constructive fraud" is not limited only to the parties with an actual fiduciary relationship, even though there shall be some underlying fiduciary relationship in existence (and there clearly was one between Plaintiff and the end broker/agent the name of which Plaintiff does not recall).  To allege "constructive fraud" Plaintiff is not required to allege fraud claim exclusively against the mortgage agent that helped originating the allegedly fraudulent loan as it is commonly presented by originating lenders, MERS and other players in the securitization market.  Rather, if Defendant knew or should have known that the broker's conduct breached a duty to disclose and if Defendant provided substantial assistance to that conduct, they may be liable under an aiding-and-abetting theory.  See for instance *In re First Alliance Mortgage Co.*, 471 F.3d 977, 993 (9th Cir. 2006) (upholding a verdict

against defendant for fraud where the defendant securitized loans that it knew were fraudulently originated and provided substantial assistance to the original lender) (citing *Casey v. U.S. Bank N.A.*, 127 Cal. App. 4th 1138 (2005)). Similarly, a "constructive fraud" claim can be based on a number of other theories such as conspiracy, which was clearly alleged in the Complaint as a part of this cause of action.

Plaintiff alleges that in spite of the fact that now Defendants (not surprisingly) attempt to distant themselves from the actions of the unknown and probably even unascertainable at the moment end agents/brokers, Defendants were not just innocent bystanders but were in fact very much active participants in all of these events. Defendants at the very least aided and abetted the end agent by failure to implement any reasonable system of internal checks and balances and/or failure to exercise any reasonable diligence in the process of loan approval by using reasonable underwriting standards. Alternatively and more likely, from the very beginning Defendants conspired with each other and other players, including end broker/agent, for a purpose of getting this unconscionable loan approved for only one purpose - resale on the open market. Conspiracy is notoriously hard to prove[1], however, all circumstances of this case point to such an outrageous gross negligence (if not outright fraud) by all parties involved, including Defendants, that it is hard not to suggest that there was some sort of collusion between the parties. These facts can be established with certainty only upon discovery of the underlying agreements between the parties and would help to at least establish the history of loan securitization to begin with. There is sufficient information now available publically showing that mortgage brokers were routinely

---

[1] "[I]t is next to impossible to secure direct evidence of a conspiracy, unless one of the participants has confessed, and that the proof must usually be inferential and circumstantial" *Campbell v. Birch*, 19 Cal. 2d 778, 789-790 (Cal. 1942). "In cases of conspiracy to defraud it is not to be expected that direct evidence of the conspiracy can be secured, because such evidence could usually only be secured in the event one of the conspirators confessed." *Johnstone v. Morris,* 210 Cal. 580, 590 [292 Pac. 970].

Fraud causes of actions require less specificity when 'it appears from the nature of the allegations that the defendant must necessarily possess full information concerning the facts of the controversy,' *Bradley v. Hartford Acc. Indem. Co.* (1973) 30 Cal.App.3d 818, 825; '[e]ven under the strict rules of common law pleading, one of the canons was that less particularity is required when the facts lie more in the knowledge of the opposite party....' *Turner v. Milstein* (1951) 103 Cal.App.2d 651, 658.

11
Opposition to and Memorandum of Points and Authorities in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss the First Amended Complaint; Motion for Ruling on the Hearing

compensated much better by Lenders for the loans that were least beneficial to borrowers (such as negative amortization loans).

Defendants did not stop just at that though, they further engaged in fraudulent conduct when they failed to disclose relevant information when Plaintiff approached Defendant EMC to obtain a loan modification, as it is alleged in the Complaint. In furtherance of the same fraudulent actions, they wrongfully initiated or directed other parties to initiate foreclosure proceedings against the Subject Property without disclosing the name(s) of the true beneficiaries under the Note, thus further precluding Plaintiff from the ability to negotiate any meaningful loan modification with such true beneficiary or assert meaningful defenses against such foreclosure. The fact that Defendants repeatedly failed to disclose the actual fate of the Note and loan at issue is just the latest evidence to support the alleged conspiracy theory.

Thus, Plaintiff believes that she alleged as much facts as it was possible under the circumstances, the rest of the information is with the Defendants and can be discovered only through this litigation.

Based on the foregoing Plaintiff respectfully asks to deny Defendants' Motion to Dismiss as to the fraud-related causes of actions and all other causes of actions alleged in the Complaint and to allow her to proceed with the discovery process to prove those claims.

Dated: November 17, 2009 /s/ Oxana Kozlov, Esq.

_____
Attorney for Plaintiff Elena Yulaeva