Oxana Kozlov, Esq. (SBN 209210)
649 Dunholme Way
Sunnyvale, CA 94087
Telephone: (650) 814-7708

Attorney for Plaintiff
Elena Yulaeva

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELENA YULAEVA<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>GREENPOINT MORTGAGE FUNDING, INC.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; EMC MORTGAGE CORPORATION; and DOES 1 through 10, inclusive,<br><br>　　　　Defendants. | CASE NO. 09-cv-01504-LKK-KJM<br><br>**(JURY TRIAL REQUESTED)**<br><br>**HONORABLE LAWRENCE K. KARLTON**<br><br>OPPOSITION TO MOTION TO DISMISS THE FIRST AMENDED COMPLAINT FILED BY DEFENDANT GREENPOINT MORTGAGE FUNDING;<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO DISMISS;<br><br>Hearing Date: December 21,2009<br>Time: 10:00 a.m.<br>CTRM: "4"<br><br>Action Filed: April 20, 2009 |

Plaintiff, ELENA YULAEVA ("Plaintiff") respectfully submits the following opposition ("Opposition") to the Motion to Dismiss ("Motion to Dismiss") filed by Defendant GREENPOINT MORTGAGE FUNDING ("Defendant") and supporting Memorandum of Points and Authorities.

1. Plaintiff filed her Verified Complaint in the Superior Court of the State of California for the County of Sacramento ("Superior Court"), Case No. 34-2009-00041683, on April 20, 2009 (the "State Action").

2. On June 1, 2009, the State Action was removed to this Court by other defendants. Defendant claims that it has not been properly notified about the removal and thus did not file a timely response to the original complaint.

3. In the Motion to Dismiss Defendant moved the Court to dismiss Plaintiff's first amended complaint ("Verified Complaint") pursuant to Federal Rules of Civil Procedure ("FDRP") 12(b)(6) and 12(b)(7). As discussed in detail in the Memorandum of Points and Authorities, Defendant's Motion to Dismiss has no merit and should be denied in its entirety because Plaintiff has sufficiently pled that relief can be granted on each and every one of the Verified Complaint's causes of action. Further, the mortgage broker is not an indispensable party to this action, and even if it was, only discovery in this action will establish the name of the broker with certainty as Plaintiff simply lacks the documents to this effect. Plaintiff will address all arguments presented in the Motion to Dismiss in their order in the Memorandum of Points and Authorities.

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO FDEFENDANTS' MOTION TO DISMISS

## I  SUMMARY OF ARGUMENT: DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED IN ITS ENTIRETY

Defendants' Motion to Dismiss should be denied in its entirety because Plaintiff has sufficiently pled that relief can be granted on each and every one of the Verified Complaint's causes of action. Federal Rule of Civ. Procedure 12(b)(6) provides for dismissal if a Plaintiff fails to state a claim upon which relief can be granted. A complaint should not be dismissed, however, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief." *Housley v. U. S.,* 35 F.3d 400, 401 (9th Cir. Nev. 1994). "Moreover, all allegations of material fact in the complaint are taken as true and construed in the light most favorable to plaintiff." *Argabright v. United States*, 35 F.3d 1476, 1479 (9th Cir. 1996). As discussed below, the Verified Complaint satisfies the requirements of the federal rules and thus the Motion to Dismiss should be denied. Defendnat's attempt to dismiss the Verified Complaint under Federal Rule of Civ. Procedure 12(b)(7) also lacks any merits as discussed in more detail below.

## II  STATEMENT OF FACTS

In or around November 2005, Plaintiff entered into an explicit contract with Defendant, whereby Plaintiff obtained a negative amortization loan to purchase her home located at 10178 Clarina Way, Elk Grove, California 95758 ("Subject Property"). On information and belief, the contract was later assigned to EMC Mortgage Corporation ("EMC") and later to a securitization trust. Plaintiff, however, was not provided with any information related to this chain of loan assignments in spite of her multiple requests and Defendant MERS in its Motion to Dismiss pleading papers still claims to be an agent of Defendant for all practical purposes related to the foreclosure proceedings at issue.

As clearly alleged in the Verified Complaint, Defendant and its agents (including mortgage broker) failed to verify Plaintiff's income. As a result, the application that Plaintiff signed at close

did not accurately reflect her income, which she did not realize until after she was able to review the documents much later, only after the dispute regarding loan modification with Defendant EMC has arisen a few months back. Conrary to what is asserted in the Motion to Dismiss, Plaintiff does not admit submitting to Defendant any applications with inaccurate and fraudulent information as she did not submit any such information on the application. Neither had she any need to do so because her income at the time would be more than sufficient to qualify her for a loan she thought she was applying to. Defendant failed to provide Plaintiff with the necessary disclosures (directly or through the broker), as required under the Truth in Lending Act and Real Estate Settlement Procedures Act ("TILA"). In particular, at no time did Defendnat and its agents explained or disclosed to Plaintiff that her interest rate will not be fixed for the same period of time as her low introductory payment (as a matter of fact, the introductory interest was presented to be 2% for the first 360 months on her loan application), and that all of this constantly changing unpaid interest will be added to the principle balance.

Contrary to what is presented in the Motion to Dismiss, 2% interest is a perfectly reasonable expectation for a person who came to this country from a former Soviet Union, where government-sponsored home loans had exactly 0% interest at the time Plaintiff lived there. The knowledge of someone in the mortgage business in this country simply cannot be imputed to a person of entirely different background and that is actually one of the allegations in the Verified Complaint. It is very easy to say that the expectation would not be reasonable in retrospect and conveniently forget all false advertisement compains conducted by Defendant and other lenders in which the "unrealistic" 1-2% loans were widely advertised to unsuspecting unsophisticated borrowers without any reasonable explanation of details of negative amortization of these loans. It is not surprising that foreigners were affected by these lending practices much more than Americans who at least had an advantage of living in this country for period of time and being familiar with normal lending practices.

Plaintiff suffered a real "payment shock" at the time when her fixed payment period expired, at which time she attempted to obtain a loan modification, all to no avail. Moreover, as alleged in

more detail in Verified Complaint Defendant breached its fiduciary duty, committed fraud, and unfair business practices by providing Plaintiff with a loan Defendant knew or should have known she could not afford in the long run.  Moreover, on information and belief, Defendant securitized the note and the only purpose in underwriting the loan was its securitization.

It is as a result of Defendant's fraud, breach of fiduciary duty, and unfair business practices, committed by Defendant in conspiracy with other parties, that the Subject Property is now in foreclosure and in this foreclosure defense litigation.

**III. CAUSES OF ACTION BASED ON VIOLATION OF TRUTH IN LENDING ACT AND RESPA AGAINST DEFENDANT SHOULD NOT BE DISMISSED**

The only argument that Defendant raises in support of its Motion to Dismiss with respect to these two causes of actions is the statute of limitations.  Plaintiff was granted the leave to amend her original complaint on this issue.  The Verified Complaint clearly alleges that the claim was brought within one year after Plaintiff discovered (or had a reason to discover) the TILA and RESPA violations.  With respect to Plaintiff's alleged duty of due diligence to discover such violations earlier, the growing number of courts hold that when the Plaintiff is not fluent in English, such as the case here, equitable tolling is justified as it would take borrower longer to discover any TILA and/or RESPA violation in English documents.  The recent order of another California District Court (Southern) in case of Petra Pelayo v. Home Capital Funding, Your Money Store, **EMC Mortgage Corporation**, et. al. (No. 08-CV-2030 IEG) is very instructive.  In that case the issue of equitable tolling of TILA and RESPA claims was resolved in favor of plaintiff under similar circumstances with language issue cited as the main factor in support of the decision.  Again, what might be "reasonable diligence" for a reasonably sophisticated and educated American, might not be "reasonable" for a new comer to this country who had no reason to suspect such outrageous legalized mortgage fraud of truly epic proportion and who simply trusted that the documents she was asked to execute were what they were presented to her to be.

With respect to the most recent RESPA violation claim (failure to respond to the QWR), inapplicability of this claim to Defendant can be established with certainty only after the fact of the

loan assignment by Defendant to other parties is ascertained through the discovery in this action. As of now such parties remain unknown, in particular due to the defendnats' failure to respond to the QWR. What all defendnats are in effect doing in this litigation so far is simply trying to shift the liability from one to another and, even better, to some unnamed parties whom they refuse to name. As of now, Defendnat MERS claims to have the right to initiate the foreclosure as an agent for Defendant and until discovery establishes otherwise, it is Defendant who remains liable as the only recorded (and not assigned) contract names Defendant as the lender. The fact that foreclosure documents were executed by MERS as nominee for EMC just proves the later admitted fact that the loan was securitized but until the new lender/beneficiary is established, it appears to be premature to dismiss Defendant from any of the causes of actions based on lender's liability.

For all these reasons, Defendant's Motion to Dismiss as to these causes of actions shall fail.

## IV. INTENTIONAL AND NEGLIGENT MISREPRESENTATION CAUSES OF ACTION SHOULD NOT BE DISMISSED

Under these causes of action, Defendant makes an argument that tort damages are not appropriate when the relationships are fundamentally contractual. This logic is fundamentally flawed in this instance as this in effect would prohibit any misrepresentation-related claims even when contract was procured by outright fraud, as is the case in this instance. Defendant's reliance on *Nymark v. Heart Fed. Savings & Loan Ass'n* (1991) 231 Cal. App.3d 1089, which is most often cited for the proposition of no duty to borrowers by lenders, is clearly misplaced as it was addressed in anticipation of this argument in the Verified Complaint. *Nymark* decision actually stands for the exactly opposite proposition of existing duty under the current scenario. *Nymark* is a pre-MERS decision in which the lender was what it was supposed to be – the real lender, not a vehicle to resell loans on a secondary market. The *Nymark* court indicated, however, that liability to a borrower for negligence arises "when the lender 'actively participates' in the financed enterprise 'beyond the domain of the usual money lender.'" *Id*. At 1099 (citing *Wagner v. Benson* (1980) 161 Cal.Rptr. 516). This is exactly the situation at hand because Defendants acted as participants in an elaborated scheme of loan securitization and resale on an open market ("financed enterprise"), way beyond what normally is perceived as normal lending activities. Defendant, who purportedly originated the loan in effect just brokered the loan that was already pre-sold on the

6

market, even potentially lending no money of its own at all. Only the full review of all relevant documents over the course of this litigation will uncover the full sequence of events, but one fact is already clear – none of the Defendants are lenders in a traditional (pre-MERS) sense of this word.

The appraisal issue serves to emphasize the point as in preparing the appraisal Defendant was not acting "in its conventional role as a lender of money to ascertain the sufficiency of the collateral as security for the loan." *Nymark*, 231 Cal. App.3rd at 1099. Defendant had no intent to keep the loan and thus the security and the real value of collateral issue was of no importance to it. Instead, it was the highest possible appraisal value (whether true or not) that really mattered to Defendant (and its accomplices) because they could make more money this way by first selling the loan and then servicing the loan. In other words, unlike for a traditional lender who cares about the real value of the appraised property, it was in Defendant's interest to overvalue the Subject Property and other properties to create larger pools of loans for resale and future servicing, among other things. Thus, under the *Nymark* case, Defendant's negligence (if not outright fraud) in overvaluing the Subject Property, among other things, raise to the level of torturous behavior.

Defendant's reliance on "economic loss" doctrine and other cases cited in the Motion to Dismiss is also completely misplaced as this is not a product defect or an insurance contract case and duties owed by Defendant to Plaintiff are of entirely different kind, in particular, Defendant clearly had disclosure duties under TILA and RESPA that it has chosen not to enforce. In addition, it had a duty of good faith and fair dealing as an original party to the contracts at issue. All this has been clearly alleged in the Verified Complain.

Based on the foregoing, Defendant's Motion to Dismiss as to these causes of actions shall fail.

**V. PLAINTIFF'S CLAIM FOR UNFAIR DEBT COLLECTION PRACTICES SHOULD BE PRESERVED**

Defendant in effect attempts to distance itself from any of the other defendants' activities to collect on the loan originated by Defendant. Even though it very well may be that Defendant indeed had no part in such activities, defendants' failure to disclose the history of loan assignments/transfers make this claim just what it is – unsubstantiated claim, not based on any

hard evidence. Only further discovery in this action will help establish Defendant's role, if any, in the process of debt collection or its status as a debt collector.

For this reason this cause of action should be preserved pending the discovery related to the Plaintiff's loan history[1].

## VI. PLAINTIFF'S CLAIM FOR BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING SHOULD NOT BE DISMISSED AS TO DEFENDANT MERS.

The main allegation against this cause of action is that there is no contractual relationship between Plaintiff and Defendant. As discussed in more detail above, the chain of loan assignment is unascertained at the moment. Defendant is clearly a party to the Deed of Trust recorded at the Recorder's office and no assignments to any other party are recorded. Thus, none of the Defendant's arguments in the Motion to Dismiss have merits.

Therefore, the Motion to Dismiss shall be denied as premature as to this cause of actions.

## VII. PLAINTIFF'S CLAIM FOR UNFAIR BUSINESS PRACTICES SHOULD NOT BE DISMISSED

The Unfair Business Practices law prohibits "any unlawful, unfair or fraudulent" business practice. Cal. Bus. & Prof. Code § 17200. The statute "has a broad scope that allows for 'violations of other laws to be treated as unfair competition that is independently actionable' while also 'sweep[ing] within its scope acts and practices not specifically proscribed by any other law.'" *Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114, 1122 (9th Cir. 2009) (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 949 (2002)). Business and Professional Code, § 17200 authorizes a private right of action for "any practices forbidden by law be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made. It is not necessary that the predicate law provide for private civil enforcement. Section 17200 borrows violations of other laws and treats them as unlawful practices independently actionable. "Unfair" simply means any practice whose harm to

---

[1] The instances are known of the loans assigned back to loan originators due to violation of the terms of the Pooling and Servicing Agreements. The litigation initiated by certain loan assignees against Defendant related to the "bad mortgages" is also not coincidental and may have potential ramification as to the fate of at least certain of the Defendant-originated loans.

the victim outweighs its benefits.  "Fraudulent," as used in the statute, does not refer to the common law tort of fraud, but only requires a showing members of the public are likely to be deceived."

Plaintiff clearly alleges in her Verified Complaint that Defendant engaged in fraudulent and/or negligent misrepresentation in originating the loan, directly or constructively as a part of conspiracy with other parties.  Such acts constitute unlawful business acts and/or practices within the meaning of California Business and Professions Code § 17200 et seq.  Thus to the extent the fraudulent and negligent misrepresentation causes of actions survive the Motion to Dismiss, so should the Unfair Business Practices cause of actions.

The extent of Defendant's involvement with the other illegal activities alleged in the Verified Complaint, such as foreclosure proceedings, can be established only through the discovery.  In its own Motion to Dismiss pleading papers Defendant MERS for example asserts that it was initiating foreclosure as an agent for Defendant.  This clearly contradicts the claims in Defendnat's Motion in Dismiss, where Defendant disclaims any participation in the foreclosure proceedings.   As alleged in the Verified Complaint, defendants violated numerous California non-judicial foreclosure laws and the degree of their involvement will be established through further discovery in this matter.

Based on the foregoing, the Motion to Dismiss as to this cause of action should be denied as premature.

**VIII. THE COMPLAINT DID NOT FAIL TO JOIN A PARTY UNDER RULE 19**

It is very common nowadays for the loan originators to attempt to shift the burden of wrongdoing on the mortgage brokers who solicited and brokered loans for such loan originators but allegedly were agents for the borrowers.  Such arguments have no merit as mortgage brokers can be agents of borrowers and/or lenders depending on the nature of the contractual agreements between or among the parties and other circumstances, in particular the nature of compensation received by such brokers.  Over the last decade mortgage brokers clearly represented lenders' interests and were almost always well compensated for brokering the loans that were least

advantageous to borrowers. They did so in furtherance of the loan securitization conspiracy that was clearly alleged in the Verified Complaint.

The documents were prepared by Defendant and most of the loan related communications were conducted by Defendnat's employees to the best of Plaintiff's recollection. She was not provided with the documents that would have the name of the mortgage broker at the time of closing and thus cannot easily find out who that mortgage broker was. Only discovery in this matter can establish what mortgage broker was involved in her loan transaction.

For these reasons, Defendant's arguments that Plaintiff "mysteriously" failed to name the Broker "when it is painfully obvious that they must be named" fails. What might be "painfully obvious" for Defendant is less than obvious for Plaintiff who hardly got a chance to communicate with the mortgage broker some 4 years ago and lacks any documents to resfresh her memory. Needless to say, such mortgage broker might not even exist any more. In addition, only discovery can establish the exact nature of Defendnat's contractual agreement with such mortgage broker.

Based on the foregoing, the Motion to Dismiss on this ground should be denied.

Dated:___12/03/2009__           ____/s/ Oxana Kozlov, Esq._____
                                                              Oxana Kozlov, Esq.,
                                                              Attorney for Plaintiff Elena Yulaeva