1
2
3
4
5
6
7                    UNITED STATES DISTRICT COURT

8              FOR THE EASTERN DISTRICT OF CALIFORNIA

9
ELENA YULAEVA,
10
                                NO. CIV. S-09-1504 LKK/KJM
11          Plaintiff,

12      v.
                                        O R D E R
13  GREENPOINT MORTGAGE FUNDING,
    INC.; MORTGAGE ELECTRONIC
14  REGISTRATION SYSTEMS, INC.;
    EMC MORTGAGE CORPORATION; and
15  DOES 1 through 10, inclusive,

16          Defendants.

17  _____/

18      Plaintiff in this suit brings various claims arising out of

19  foreclosure on her mortgage. Plaintiff's first amended complaint

20  ("FAC") names three defendants: Mortgage Electronic Registration

21  Systems Inc. ("MERS"), EMC Mortgage Corporation ("EMC"), and

22  Greenpoint Mortgage Funding, Inc. ("Greenpoint"). Greenpoint moves

23  to dismiss all claims against it, while MERS and EMC, in a joint

24  motion, move to dismiss the majority of claims against them.  The

25  court resolves both motions on the papers.  For the reasons stated

26  below, the motions to dismiss are granted in part.

                               1

1                              **I. BACKGROUND**

2    **A.   Procedural History**

3         These motions concern plaintiff's FAC.  Plaintiff's prior

4    complaint was filed in state court and removed by MERS and EMC.

5    MERS and EMC then moved to dismiss the initial complaint.   The

6    court denied that motion as to some claims and dismissed the

7    remaining claims without prejudice.  Order of Sept. 3, 2009, 2009

8    WL 2880393, 2009 U.S. Dist. LEXIS 79094. Greenpoint had not stated

9    an appearance at that time.  Plaintiff then filed her FAC.  The FAC

10   abandons some claims found to be insufficient (the rescission,

11   conspiracy, and Cal. Civ. Code section 2923.5 causes of action),

12   attempts to cure deficiencies in others (TILA, RESPA, and

13   misrepresentation), re-alleges the remaining claims, and adds a

14   claim for wrongful foreclosure.

15        All defendants now move to dismiss the FAC.  EMC and MERS move

16   to dismiss only those claims previously dismissed, together with

17   the newly added wrongful foreclosure claim.  Greenpoint, which was

18   not party to the prior motion, moves to dismiss all claims against

19   it.

20   **B.   Plaintiff's Initial Loan**[1]

21   _____

22        [1] MERS requests that this court take judicial notice of
     documents titled "grant deed", "deed of trust", and "notice of
23   default and election to sell under deed of trust."  These documents
     are public records, recorded in the Sacramento County Recorder's
24   Office, and properly subject to judicial notice. Fed. R. Evid.
     210(d).  The court may take judicial notice of these documents
25   without converting MERS's motion to dismiss into a motion for
     summary judgment.  Plaintiff has not objected to the request for
26   judicial notice.  Accordingly, the court GRANTS MERS's request for
     judicial notice.

In October 2005, plaintiff obtained a home loan from defendant Greenpoint. FAC ¶ 11. In entering the loan transaction plaintiff purports to have relied upon Greenpoint's promises that her payments and interest rate would remain fixed for the first 360 months of the loan. FAC ¶ 13. At the time of loan origination plaintiff believed that she would be given an opportunity to refinance the loan before it reset. FAC ¶ 15.

The loan was finalized on October 20, 2005. FAC ¶ 11. The loan's terms were memorialized with a promissory note, which was secured by a deed of trust. MERS's RFJN Ex. 2; <u>see also</u> Order of Sept. 3, 2009 at 3 (summarizing California law regarding deeds of trust). The deed of trust named defendant Greenpoint as lender. MERS's RFJN Ex. 2. MERS is listed as the beneficiary, acting solely as nominee for the lender. <u>Id.</u> After the loan was made and the deed of trust was recorded, defendant EMC became the servicer of the loan. FAC ¶ 4.

Plaintiff could not review any loan documents prior to closing because she was not given copies of these documents beforehand, and while some documents were present at closing, plaintiff was not given time to read them at that time. FAC ¶¶ 21, 22. Plaintiff speaks English as a second language and claims that her limited English proficiency made it difficult to understand the documents and the terms of the loan. FAC ¶ 22. "Much later" than

Aside from the judicially noticed documents, these facts are taken from the FAC's allegations, which are taken as true for the purpose of the pending motion only.

the October 20, 2005 closing, plaintiff examined the loan documents. FAC ¶ 26. Only at that time did she discover that defendants misstated her income on the application. Id.

## C.   Subsequent Events

Plaintiff alleges that absent parties have acquired an interest in the loan, but that the nature of these interests and details of the acquisition are unclear. Plaintiff alleges that the loan has been securitized, and that the effect of this is that "the mortgage is currently owned by a number of unknown investors." FAC ¶ 27. Plaintiff alleges that she learned of these investors when EMC informed plaintiff that EMC did "not have the power to enter into a loan modification without investors' approval." FAC ¶ 14.[2]

In September of 2008, the loan's fixed payment period expired, and plaintiff's monthly payments increased from $1,561.11 to $2871.50.[3] FAC ¶ 13, Pl.'s RFJN Ex. 1. Plaintiff was unable to make the higher payments. Plaintiff states that until this adjustment, she did not believe that she had any reason to worry about her loan. FAC ¶ 23.

On February 11, 2009, Aztec Foreclosure Corporation ("Aztec"),

_____

[2] Plaintiff alleges that this communication occurred in mid-September 2009. FAC ¶ 14. It appears that plaintiff means September 2008, in that plaintiff alleges that she followed up on this communication in November 2008, and the FAC was filed on September 23, 2009.

[3] Again, the FAC's allegations are inconsistent, alleging that the loan adjusted in September of 2008, FAC ¶ 13, and alternatively in September of 2009, FAC ¶ 23. The court adopts the earlier date, as this is the only one consistent with the complaint's remaining allegations, and therefore the interpretation most favorable to the plaintiff.

1  purportedly acting as agent for the beneficiary under the deed of

2  trust, filed a notice of default as to the mortgage.  MERS's RFJN

3  Ex. 4.  On February 26, 2009, MERS substituted Aztec as trustee on

4  the deed of trust.  MERS's RFJN Ex. 6.[4]  Plaintiff sent defendant

5  EMC a purported qualified written request ("QWR") on April 10,

6  2009. FAC ¶ 24. On May 13, 2009, Aztec issued a notice of trustee's

7  sale, indicating that the mortgaged property would be sold at

8  auction on June 4, 2009.  MERS's RFJN Ex. B. This notice was

9  recorded on May 18 2009. Id.

10      Concurrent with these proceedings, plaintiff filed the initial

11  complaint in this lawsuit in state court on April 30, 2009.  EMC

12  and MERS removed the suit on June 1, 2009.  EMC and MERS then moved

13  for dismissal.  As noted above, the court granted that motion in

14  part on September 3, 2009.

15                          **II. STANDARD**

16      A Fed. R. Civ. P. 12(b)(6) motion challenges a complaint's

17  compliance with the pleading requirements provided by the Federal

18  Rules.  In general, these requirements are provided by Fed. R. Civ.

19  P. 8, although claims that "sound[] in" fraud or mistake must meet

20  the requirements provided by Fed. R. Civ. P. 9(b).  Vess v.

21  Ciba-Geigy Corp., 317 F.3d 1097, 1103-04 (9th Cir. 2003).

22  ////

23

24      [4] While plaintiff does not specifically rely on this series
    of events, it appears that Aztec was a stranger to the transaction
25  at the time it filed the notice of default, thus possibly putting
    the propriety of the entire foreclosure in doubt. The problem is
26  discussed in some detail, infra.  See footnote 19.

**A.    Dismissal of Claims Governed by Fed. R. Civ. P. 8**

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The complaint must give defendant "fair notice of what the claim is and the grounds upon which it rests."  <u>Twombly</u>, 550 U.S. at 555 (internal quotation and modification omitted).

To meet this requirement, the complaint must be supported by factual allegations.  <u>Iqbal</u>, 129 S. Ct. at 1950.  "While legal conclusions can provide the framework of a complaint," neither legal conclusions nor conclusory statements are themselves sufficient, and such statements are not entitled to a presumption of truth.  <u>Id.</u> at 1949-50.  <u>Iqbal</u> and <u>Twombly</u> therefore prescribe a two step process for evaluation of motions to dismiss.  The court first identifies the non-conclusory factual allegations, and the court then determines whether these allegations, taken as true and construed in the light most favorable to the plaintiff, "plausibly give rise to an entitlement to relief."  <u>Id.</u>; <u>Erickson v. Pardus</u>, 551 U.S. 89 (2007).

"Plausibility," as it is used in <u>Twombly</u> and <u>Iqbal</u>, does not refer to the likelihood that a pleader will succeed in proving the allegations.  Instead, it refers to whether the non-conclusory factual allegations, when assumed to be true, "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Iqbal</u>, 129 S.Ct. at 1949.  "The plausibility standard is not akin to a 'probability requirement,'

but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 557).  A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

**B.   Dismissal of Claims Governed by Fed. R. Civ. P. 9(b)**

A Rule 12(b)(6) motion to dismiss may also challenge a complaint's compliance with Fed. R. Civ. P. 9(b).  See Vess, 317 F.3d at 1107.  This rule provides that "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." These circumstances include the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (quoting Edwards v. Marin Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2004)).  "In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, 'identif[y] the role of [each] defendant[] in the alleged fraudulent scheme.'" Id. at 765 (quoting Moore v. Kayport Package Express, 885 F.2d 531, 541 (9th Cir. 1989)).  Claims subject to Rule 9(b) must also satisfy the ordinary requirements of Rule 8.

### III. ANALYSIS

The FAC presents two federal claims: a claim under the Truth in Lending Act ("TILA") against EMC and Greenpoint and a claim

under the Real Estate Settlement Procedures Act("RESPA") against all defendants.  The court denies the motion to dismiss in part as to these claims.  Because federal claims remain, the court continues to exercise supplemental jurisdiction over the eight state law claims pursuant to 28 U.S.C. § 1367.

**A.   TILA**

Plaintiff's third claim seeks civil damages from Greenpoint and EMC under TILA.  Both of these defendants argue that this claim is barred by the applicable one year statute of limitations.[5]  The court concludes that the FAC reveals a possible entitlement to equitable estoppel as to only some bases of the TILA claim.  The motions to dismiss are therefore granted in part and denied in part in this regard.

Before reaching the limitations question, the court begins with the allegations underlying the TILA claim.  First, plaintiff alleges that defendants lowered their underwriting standards and issued the loan without regard for plaintiff's ability to repay it. FAC ¶¶ 47, 48.  TILA prohibits creditors from adopting "a pattern or practice of extending credit to consumers under [covered] mortgages . . . based on the consumer's collateral without regard to the consumer's repayment ability, including the consumer's current and expected income, current obligations, and employment."

---

[5] EMC further argues that it is not liable under TILA because EMC is only a loan servicer and not an assignee of the loan.  The court rejected this argument in the September 3, 2009 order, and EMC has not offered any new argument here.  Order of Sept. 3, 2009 at 29-30.

1  15 U.S.C. § 1639(h). Read liberally, plaintiff has alleged a

2  violation of this section. Second, plaintiff alleges that

3  defendants failed to make timely disclosures regarding "the

4  calculation of interest prior and after [the loan's] adjustment."

5  FAC ¶ 46. TILA mandates these disclosures. 15 U.S.C. §§

6  1639(a)(2)(A)-(B). Plaintiff's remaining allegations are that "the

7  purchase price of the property and the loan amount were based on

8  the inflated appraisal, not on the real value of the [p]remises"

9  and that defendants "failed to provide [p]laintiff with information

10 with respect to reasonable alternatives and/or more conventional

11 loan terms." FAC ¶ 47. TILA does not prohibit this conduct.

12 Although defendants have not moved for dismissal of the TILA claim

13 on this ground, "[a] trial court may dismiss a claim <u>sua sponte</u>

14 under Fed. R. Civ. P. 12(b)(6)[, and] [s]uch a dismissal may be

15 made without notice where the claimant cannot possibly win relief."

16 <u>Omar v. Sea-Land Service, Inc.</u>, 813 F.2d 986, 991 (9th Cir. 1987)

17 (citing <u>Wong v. Bell</u>, 642 F.2d 359, 361-62 (9th Cir. 1981)); <u>see</u>

18 <u>also</u> <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 683 (9th Cir. 2001).

19 Here, it is appropriate to first address whether facts actually

20 support a claim before addressing whether inability to discover

21 those facts entitles plaintiff to tolling or estoppel with respect

22 to that claim.[6] Because this issue was not discussed in the prior

23

24      [6] To clarify, the court addresses this ground for dismissal
   <u>sua sponte</u> because the question of whether plaintiff has stated a
   claim facilitates the equitable tolling and estoppel analyses, and
25 the Ninth Circuit has instructed the courts to engage in the latter
   analyses regardless of whether the plaintiff invokes these
26 doctrines. <u>Cervantes v. City of San Diego</u>, 5 F.3d 1273, 1277 (9th

order, dismissal of these allegations is without prejudice. Plaintiff's FAC states two factual bases for the TILA claim: that (1) defendants failed to make initial timely disclosures under 15 U.S.C. §§ 1639(a)-(b), and (2) issued the loan without regard for plaintiff's ability to repay it under 15 U.S.C. § 1639(h).

Both factual bases were complete at the time the loan closed, on or around October 20, 2005. FAC ¶ 11. TILA provides a one-year statute of limitations for claims for civil damages. 15 U.S.C. § 1640(e). The TILA limitations period began to run at that time, King v. California, 784 F.2d 910, 914 (9th Cir. 1986), and normally would have expired in October of 2006. Plaintiff filed her claim roughly thirty months later, on April 30, 2009.

Section 1640(e)'s limitations period may be equitably tolled, King, 784 F.2d at 915, and equitably estopped, Ayala v. World Sav. Bank, FSB, 616 F. Supp. 2d 1007 (C.D. Cal. 2009). The court must consider both of these doctrines in evaluation of a motion to dismiss based on a statute of limitations grounds, and such a motion must be denied if the complaint "adequately alleges facts showing the potential applicability" of either doctrine. Cervantes

_____

Cir. 1993). Absent such a circumstance, the court typically confines its analysis to the issues raised by the movant. See, e.g., post section III(E) n.21 (declining to address sua sponte whether the Rosenthal Act and Federal Fair Debt Collection Practices Act prohibit defendants' alleged conduct). This point bears repeating in the context of the recent mortgage cases in this district, where the quality of briefing indicates that the quantity of cases has overwhelmed the relevant segments of the plaintiff and defense bars. To summarize, although the court *may* dismiss claims sua sponte, in general, the court's silence on a potential weakness in a claim should not be taken as a tacit endorsement of the claim's merits.

1  v. City of San Diego, 5 F.3d 1273, 1277 (9th Cir. 1993); see also

2  Lien Huynh v. Chase Manhattan Bank, 465 F.3d 992, 1003-04 (9th Cir.

3  2006), Supermail Cargo, Inc. v. United States, 68 F.3d 1204, 1206

4  (9th Cir. 1995).  Although the FAC invokes only equitable tolling,

5  the court must consider both tolling and estoppel if they are

6  supported by the facts alleged.  Cervantes, 5 F.3d at 1277.  More

7  generally, because the statute of limitations is an affirmative

8  defense, resolution of a motion predicated on this defense requires

9  the court to look beyond the complaint.[7]

10      "Equitable estoppel focuses primarily on the actions taken by

11  the defendant in preventing a plaintiff from filing suit, whereas

12  equitable tolling focuses on the plaintiff's excusable ignorance

13  of the limitations period and on lack of prejudice to the

14  defendant."  Santa Maria v. Pacific Bell, 202 F.3d 1170, 1176 (9th

15  Cir. 2000), overruled on other grounds by Socop-Gonzalez v. INS,

16  272 F.3d 1176, 1196 (9th Cir. 2001) (en banc).[8]  To benefit from

17  _____

18      [7] The rules recently announced in Twombly and Iqbal appear not
    to abrogate the above cases.  See Champlaie v. BAC Home Loans
19  Servicing, LP, No. CIV. S-09-1316, 2009 U.S. Dist. LEXIS 102285,
    *50-51 (E.D. Cal. Oct. 22, 2009) (citing Plascencia v. Lending 1st
20  Mortg., 583 F. Supp. 2d 1090, 1098 (N.D. Cal. 2008), Nava v.
    Virtualbank, No. 2:08-CV-00069, 2008 U.S. Dist. LEXIS 72819 (E.D.
21  Cal. July 16, 2008)).

22      [8] Santa Maria held in part that when a plaintiff showed facts
    that would entitle her to equitable tolling or equitable estoppel
23  a portion of the limitations period, the plaintiff nonetheless
    needed to show that the remainder of the limitations period was
24  inadequate to enable the plaintiff to file.  202 F.3d at 1179.
    Socop-Gonzalez rejected this approach, instead holding that tolling
25  stopped the clock, allowing the plaintiff the benefit of the full
    limitations period once the impediment to suit has been resolved.
26  272 F.3d at 1195-96.

1   equitable tolling, plaintiff must show that "it would be unfair or

2   unjust to allow the statute of limitations to act as a bar" to a

3   claim.  Lien Huynh, 465 F.3d at 1004.  Such unfairness exists where

4   "extraordinary circumstances beyond [plaintiff's] control made it

5   impossible to file the claims on time," Seattle Audubon Soc'y v.

6   Robertson, 931 F.2d 590, 595 (9th Cir. 1991) or where "despite all

7   due diligence, a plaintiff is unable to obtain vital information

8   bearing on the existence of his claim," Santa Maria, 202 F.3d at

9   1178.  Although equitable estoppel similarly defies rigid tests,

10  the Ninth Circuit has held that a plaintiff may show (1) actual and

11  reasonable reliance on defendant's conduct or representations, (2)

12  improper purpose, or knowledge of potential for deception, on the

13  part of defendant, and (3) satisfaction of the purposes underlying

14  the limitations period.  Santa Maria, 202 F.3d at 1176.  These

15  doctrines partially overlap.  For example, a plaintiff might be

16  unable to discover the facts despite due diligence because those

17  facts are concealed by the defendant.  Id. at 1177 ("Equitable

18  estoppel  may  apply  against  an  employer  when  the  employer

19  misrepresents  or  conceals  facts  necessary  to  support  a

20  discrimination charge.").

21      The first fact potentially excusing plaintiff's delay in

22  filing suit was defendants' failure to disclose the loan's interest

23  rate.[9]  Equitable estoppel requires wrongful conduct beyond the

24

        [9]  The  other  alleged  initial  omissions,  concerning  the
25  appraisal  used  to  value  the  house  and  the  availability of other
    forms of loans, appear to have no bearing on plaintiff's ability
26  to bring the claims here.

1  wrongdoing upon which the plaintiff's claim is based. <u>Lukovsky v.</u>
2  <u>City & County of San Francisco</u>, 535 F.3d 1044, 1052 (9th Cir. 2008)
3  (quoting <u>Guerrero v. Gates</u>, 442 F.3d 697, 706 (9th Cir. 2006)),
4  <u>Santa Maria,</u> 202 F.3d at 1177 (citing <u>Cada v. Baxter Healthcare</u>
5  <u>Corp.</u>, 920 F.2d 446, 450-51 (7th Cir. 1990)). That is, the failure
6  to make a disclosure cannot be both the basis for a TILA claim and
7  the ground for estopping assertion of the statute of limitations
8  with respect to the same TILA claim. The alleged violation of
9  section 1639(h), however, concerns lending without regard to
10 plaintiff's ability to repay rather than any disclosure
11 requirement. As to this theory of liability, the conduct
12 potentially giving rise to estoppel is separate from the conduct
13 underlying the claim itself. Moreover, plaintiff alleges that
14 defendants concealed the actual interest rate and gave plaintiff
15 a mistaken impression as to the terms of the loan. Plaintiff
16 alleges that she relied upon this incorrect characterization of her
17 loan. FAC ¶¶ 13, 26. At this stage, the court concludes that
18 plaintiff has shown a possibility of defendants' knowing
19 concealment, of plaintiff's actual and reasonable reliance on
20 defendants' characterization of the loan, and of this concealment
21 preventing plaintiff from learning that the loan was one she would
22 be unable to pay (the predicate of her section 1639(h) claim).[10]

23

24 [10] The court notes that this case is factually distinct from
   <u>Santa Maria</u>. One argument plaintiff raised for equitable estoppel
25 in <u>Santa Maria</u> was that defendant had concealed the existence of
   a letter sent by plaintiff's physician. 202 F.3d at 1178. The
26 court held that although defendant had not given plaintiff a copy
   of this letter, this fact did not entitle plaintiff to equitable

This concealment allegedly continued until plaintiff's interest rate increased in September of 2008.  FAC ¶ 13.  Accordingly, plaintiff has shown a *possibility* that her section 1639(h) claim filed roughly eight months later, on April 30, 2009, was timely.

As to the other basis for the TILA claim, inadequate disclosures under 15 U.S.C. §§ 1639(a)-(b), plaintiff's timeliness argument must rest on other facts.  The next fact plaintiff invokes is her limited English proficiency together with the fact that the loan documents were prepared in English.  FAC ¶ 22.  The instant case raises the following issue:  whether the verbal assurance as to the loan rate, the lack of English proficiency, the fact that the documents were not given to her in advance and the fact she did not have an opportunity to read them at the time of signing, all combine to justify delay until the time of readjustment.  The court concludes that that is a question for the jury and thus denies the motion.[11]

The next fact cited by plaintiff is defendants' failure to

---

estoppel because plaintiff nonetheless knew that the letter existed, the letter was sent by plaintiff's own doctor, plaintiff never attempted to get a copy of the letter from defendant, and nothing indicated that plaintiff was otherwise unable to obtain a copy of the letter.  <u>Id.</u>  Here, it is possible that plaintiff was unaware of the missing facts, the facts were not in the control of plaintiff's agent or some analogous person, and there is some reason to believe that plaintiff could not have gotten these facts, insofar as defendants allegedly violated a statutory command to provide them.

[11] The court must confess to having vacillated on this question during the writing of this opinion.  Having concluded that the totality of the circumstances does not justify delay as a matter of law, the question appears as one for the trier of fact.

14

respond to a QWR and defendants' concurrent refusal to provide copies of loan documents.  Plaintiff sent the qualified written request on April 10, 2009.  FAC ¶ 24, FAC Ex. C.  The request for copies of loan documents was included in this request. FAC Ex. C. Assuming that defendants failed to respond to these requests, this failure could only entitle plaintiff to estoppel or tolling after such failure, but the refusal to respond in April 2009 does not excuse earlier delays by plaintiff.

Finally, plaintiff alleges that her delay is excused by defendants' intentional obfuscation of the chain of assignment of the interests in the loan.  FAC ¶ 22.  Plaintiff has not specified the dates of such assignment and obfuscation.  Assuming that these acts occurred prior to the expiration of the limitations period, these acts nonetheless may not raise a possibility of tolling or estoppel.  Admittedly, the roles of the individual defendants in this suit are unclear.  Plaintiff has not alleged that she was able to file suit only upon piercing this obscurity.  Instead, plaintiff filed suit despite the ongoing obscurity.  As such, any concealment regarding the chain of assignment was not a barrier to the filing of the complaints in this suit.

No other facts appear relevant to the timeliness of plaintiff's claims under either equitable framework.  Accordingly, for the reason set forth, defendants' motions to dismiss plaintiff's TILA claims are granted in part, and denied inasmuch as the claim alleges violations of sections 1639(a), (b), and (h). Plaintiff may proceed on the theories of estoppel and tolling found

1  to raise a "possibility" above.

2  **B.   RESPA**

3      Plaintiff's fourth claim, brought against all defendants,

4  alleges that defendants violated sections 6 and 8 of RESPA, 12

5  U.S.C. sections 2605 and 2607.   Because the claims under these

6  sections are subject to separate requirements and concern different

7  factual allegations, the court discusses each separately.

8      **1.   Qualified Written Requests, 12 U.S.C. § 2605**

9      Plaintiff alleges that defendants violated RESPA by failing

10 to respond to a "qualified written request" ("QWR") within 20 days,

11 as required by 12 U.S.C. section 2605(e)(1)(A).[12]   A threshold

12 issue with respect to this claim is that plaintiff only alleges

13 that the QWR was sent to defendant EMC.   FAC ¶ 24.   Plaintiff has

14 not offered any cognizable theory as to how MERS and Greenpoint

15 were required to respond to a QWR that they did not receive.

16 Accordingly, this claim is dismissed as to MERS and Greenpoint.

17     EMC argues that this claim is untimely.   The claim did not

18 accrue until the statute was violated, 20 days after the QWR was

19 sent.   Plaintiff alleges that the QWR was sent on April 10, 2009.

20 FAC ¶ 24.   Claims enforcing section 2605, unlike those enforcing

21 2607, are subject to a three year statute of limitations.   12

22 U.S.C. § 2614.   Thus, the limitations period for this claim has not

23 yet expired.

24 _____

25     [12] The court notes that this violation was not alleged in the
   initial complaint, and that it apparently had not accrued at the
26 time the initial complaint was filed.   Nonetheless, defendants have
   not argued that it was improperly added in the FAC.

1    EMC separately argues that RESPA requires an allegation of

2 actual damages.  EMC relies on section 2605(f), which provides the

3 following:

> 4    Whoever fails to comply with any provision of
>      this section shall be liable to the borrower
> 5    for each such failure in the following
>      amounts:
>
> 6
>      (1) Individuals: In the case of any action by
> 7    an individual, an amount equal to the sum of--
>
> 8         (A) any actual damages to the borrower as
>           a result of the failure; and
> 9
>           (B) any additional damages, as the court
> 10        may allow, in the case of a pattern or
>           practice of noncompliance with the
> 11        requirements of this section, in an
>           amount not to exceed $1,000.
>
> 12

13 12 U.S.C. § 2605(f).  Other courts have held that section

14 2605(f)(1)(A), which allows recovery of actual damages, "has the

15 effect of limiting the cause of action to circumstances in which

16 plaintiffs can show that a failure to respond or give notice has

17 caused them actual harm."  Pok v. American Home Mortg. Servicing,

18 Inc., No. CIV 2:09-2385, 2010 WL 476674, *5 (E.D. Cal. Feb. 3,

19 2010).  Here, plaintiff has not identified any harm specifically

20 attributable to the failure to respond to the QWR.[13]  Although

21 section 2605(f)(1)(B) appears to allow statutory damages even

22 _____

23    [13] Plaintiff's sole allegation of damages in connection with
    her RESPA claim is that "As a proximate result of these violations
24 of RESPA, Defendants are liable to Plaintiff for monetary damages
    in the amount of three times the amount of any and all settlement
25 services paid directly or indirectly by Plaintiff pursuant to 12
    U.S.C. § 2607(d)(2) and costs under 12 U.S.C. § 2607(d)(5)."  FAC
26 ¶ 56.

absent actual damages, plaintiff has not alleged a pattern or practice of failures to respond to QWRs.  FAC ¶¶ 24, 55; see also Garcia v. Wachovia Mortg. Corp., No. 2:09-cv-03925, 2009 U.S. Dist. LEXIS 99308, *36 (C.D. Cal. Oct. 14, 2009) (pattern or practice requires more than a single failure to respond to a QWR), accord Pelayo v. Home Capital Funding, No. 08-CV-2030, 2009 U.S. Dist. LEXIS 44453, *11 (S.D. Cal. May 22, 2009).  Moreover, neither plaintiff's FAC nor plaintiff's oppositions to the pending motions invoke section 2605(f)(1)(B)'s statutory damages provision. Accordingly, plaintiff's RESPA claim for failure to respond to a QWR is dismissed without prejudice.

### 2.   Claims under 12 U.S.C. § 2607.

Plaintiff's remaining RESPA allegations concern conduct contemporaneous with the loan, in October 2005.  Plaintiff alleges that defendants violated 12 U.S.C. section 2607(a) and 24 C.F.R. section 3500.14(b), which prohibit fees or kickbacks in exchange for referrals.[14]  Plaintiff relatedly alleges that defendants violated 12 U.S.C. section 2607(b) and 24 C.F.R. section 3500.14(c), which prohibit payment or acceptance of fee sharing other than for services actually performed.  See FAC ¶ 53.

Defendants argue that this claim is untimely.  Private actions enforcing sections 2607(a) and (b) are subject to a one year statute of limitations.  12 U.S.C. § 2614.  Accordingly, the statute of limitations for these claims ordinarily would have

_____

[14] Unlike many other provisions of the federal lending statutes, 12 U.S.C. sections 2607(a) and (b) are substantive prohibitions, rather than mere disclosure requirements.

1   expired in October 2006, over two years before plaintiff filed
2   suit. This court, however, concludes that plaintiff's claims under
3   section 2607 reveal a possible entitlement to equitable estoppel.

4       While the Ninth Circuit has not decided whether the RESPA
5   statute of limitations is jurisdictional, and thus whether
6   equitable tolling or estoppel are available under RESPA, district
7   courts in this circuit have held that tolling is available. See
8   Brewer v. IndyMac Bank, 609 F. Supp. 2d 1104, 1118 (E.D. Cal. 2009)
9   (following Lawyers Title Ins. Corporation v. Dearborn Title Corp.,
10  118 F.3d 1157, 1166-67 (7th Cir. 1997)); but see Hardin v. City
11  Title & Escrow Co., 797 F.2d 1037, 1040-41 (D.C. Cir. 1986)
12  (holding that the RESPA statute of limitations is jurisdictional
13  and not subject to equitable tolling). District courts have
14  applied the King test for equitable tolling under TILA to tolling
15  under RESPA. Brewer, 609 F. Supp. 2d. at 1118 (citing King, 784
16  F.2d at 915). In this case, application of equitable tolling and
17  estoppel doctrines to plaintiff's section 2607 claims is similar
18  to, but simpler than, the doctrines' application to plaintiffs'
19  TILA claims. Here the complained-of conduct under section 2607
20  contains no danger of merging with an attempt to conceal it.

21      Again, plaintiff contends that defendants concealed the terms
22  of her loan, refused to respond to her inquiries regarding the
23  terms of her loan, and attempted to hide the identity of the
24  current beneficiary of the loan. Id. The court construes these
25  allegations to allege that defendants concealed their system of
26  kick-backs and charge splitting from plaintiff. As noted above,

1   some of this concealment may have occurred at the time of the

2   initial transaction, including representations made during the loan

3   process.  FAC ¶ 54.  Plaintiff again alleges that she relied upon

4   these representations.   On these facts, plaintiff has shown a

5   possibility of knowing concealment, actual and reasonable reliance

6   on defendants' characterization of the loan, and of this

7   concealment preventing plaintiff from investigating the loan or

8   discovering her RESPA claim.

9       Defendants separately contend that this claim fails because

10  plaintiff has failed to allege actual damages resulting from

11  alleged violations.   Defendants again invoke 12 U.S.C. section

12  2605(f).  As a threshold matter, it is unclear why subsection (f)

13  of section 2605, which refers to violations of "this section,"

14  applies to an action enforcing section 2607.  Indeed, section 2607

15  provides a separate private liability provision, subsection (d)(2)

16  ("Any person or persons who violate the prohibitions or limitations

17  of this section shall be jointly and severally liable to the person

18  or persons charged for the settlement service involved in the

19  violation in an amount equal to three times the amount of any

20  charge paid for such settlement service.").[15]   Nonetheless, even

21  assuming that an allegation of actual damages is required for the

22  _____

23      [15] In the prior order in this case, the court assumed without
    discussion that an allegation of actual damages was required for
24  a claim under 12 U.S.C. section 2607.  Order of Sept. 3, 2009, 2009
    U.S. Dist. LEXIS 79094, at *44, 2009 WL 2990393, at *15.  For the
25  reason stated above, the court now doubts that this assumption was
    correct.  Because plaintiff has alleged actual damages, however,
26  the court need not reach the issue.

1   section 2607 claim, plaintiff's allegations permit a reasonable
2   inference of damages, as stated by this court's prior order.  Order
3   of Sept. 3, 2009, 2009 U.S. Dist. LEXIS 79094, at *44, 2009 WL
4   2990393, at *15 ("where plaintiff alleges that she was required to
5   pay a referral fee that was prohibited under RESPA, plaintiff has
6   adequately alleged pecuniary loss.").  Accordingly, defendants'
7   motions to dismiss plaintiff's RESPA claim are denied insofar as
8   the RESPA claim is predicated on violations of 12 U.S.C. section
9   2607(a) and (b).

10  **C.   Wrongful Foreclosure**

11       Plaintiff's second claim alleges wrongful foreclosure against
12  MERS and EMC, on the ground that defendants were not authorized to
13  conduct the foreclosure proceedings, thereby violating California
14  Civil Code §§ 2924 et seq. and 2923.5.  Defendants argue that they
15  have such authority.  Defendants further argue that this claim is
16  premature because no trustee's sale has yet occurred.  This claim
17  is dismissed in part.

18       **1.   Ripeness of The Claim**

19       California courts have not clearly defined the contours of a
20  claim for wrongful foreclosure.  Defendants MERS and EMC argue that
21  "[i]t is clear that a lender or foreclosure trustee may only be
22  liable to the mortgagor or trustor for 'wrongful foreclosure' if
23  the property was fraudulently or illegally sold under a power of
24  sale in a deed of trust."  Reply at 2 (citing Munger v. Moore, 11
25  Cal. App. 3d 1, 7-8 (1970)).  Defendants argue that such a claim
26  is only available once a sale has actually occurred.

1     Such a rule would be nonsensical where, as here, the claim for
2  "wrongful foreclosure" is in essence a claim for a declaratory
3  judgment that defendants lack the authority to foreclose.  <u>See</u>
4  Pl.'s Opp'n to MERS and EMC's Mot., 8 (reiterating that this claim
5  seeks solely declaratory and injunctive relief).  Actual
6  foreclosure is not a prerequisite to such a claim.  Tellingly,
7  <u>Munger</u> concerned a claim for tort damages, rather than equitable
8  relief.  11 Cal. App. 3d at 7-8. The court further notes that in
9  at least some circumstances, California courts have allowed
10 wrongful foreclosure claims to proceed even when there was not
11 actual foreclosure.  <u>Garretson v. Post</u>, 156 Cal. App. 4th 1508,
12 1514 (2007).  Accordingly, the court rejects this ground for
13 dismissal.

14     **<u>     2.   Authority to Foreclose</u>**

15     Plaintiff raises four arguments as to why defendants lacked
16 the authority to foreclose.  She first contends that defendants
17 must produce or demonstrate ownership of the note in order to
18 demonstrate authority to foreclose.  FAC ¶¶ 39-41. Production of
19 the note is not required under California's non-judicial
20 foreclosure process.  <u>Champlaie v. BAC Home Loans Servicing, LP</u>,
21 2009 WL 3429622 at *13 (E.D. Cal. Oct. 22, 2009).  A party may
22 validly own a beneficial interest in a promissory note or deed of
23 trust without possession of the physical promissory note itself.
24 <u>Id.</u> at *13-14.  Consequently, although defendants must prove that
25 they have the right to foreclose, this proof does not require proof
26 of possession of the note.

1       Plaintiff next contends that California Law does not permit

2   a deed of trust to designate a "nominal" beneficiary, as the deed

3   of trust here purported to do.  FAC ¶¶ 17-19.  A "nominee" is, in

4   pertinent senses, "2. a person designated to act in place of

5   another, [usually] in a very limited way [or] 3. A party who holds

6   bare legal title for the benefit of others or who receives and

7   distributes funds for the benefit of others."   Black's Law

8   Dictionary, Eighth Edition, 1076 (2004).   In Parkmerced Co. v.

9   City, 149 Cal. App. 3d 1091, 1095 (1983), the California Court of

10  Appeal discussed, and endorsed, nominal ownership of real property,

11  wherein a corporation owned the property as nominee for a distinct

12  partnership.  See also Fashion Valley Mall, LLC v. County of San

13  Diego, 176 Cal. App. 4th 871, 886 n.16 (2009) (quoting and

14  following the above definition from Black's and following

15  Parkmerced), People v. Honig, 48 Cal. App. 4th 289, 308, 319 (1996)

16  (recognizing a party's nominal status as a contracting party).  As

17  explained by the court's prior order in this case, the beneficial

18  interest under a deed of trust is a real property interest.  Order

19  of Sept. 3, 2009 at 21 (citing, inter alia, Monterey S. P. P'ship

20  v. W. L. Bangham, 49 Cal. 3d 454, 460 (1989)).  Accordingly, the

21  deed of trust's initial designation of MERS as a nominal

22  beneficiary was not a per se violation of California law, and did

23  not render the deed of trust invalid ab initio.

24      Third, plaintiff argues that subsequent assignment of the

25  actual (contra nominal) beneficial interest deprived MERS of the

26  authority to foreclose.  Plaintiff alleges that Greenpoint is no

23

1  longer the actual beneficiary.[16]   Under California law, "[t]he

2  assignment of a debt secured by mortgage carries with it the

3  security."   Cal. Civ. Code § 2936.   At least one court has

4  concluded that under this statute, transfer of the actual

5  beneficial interest also automatically transfers the nominal

6  interest, such that even if the two were previously held by

7  separate parties, the transferee receives both.   In re Vargas, 396

8  B.R. 511, 516 (Bankr. C.D. Cal. 2008).   Vargas held that the

9  transferee could re-designate MERS as the nominal beneficiary, but

10  that this would require a new agency agreement between MERS and the

11  transferee.   Id. at 517.   Plaintiff alleges that no such agreement

12  is present here.   In summary, plaintiff alleges that Greenpoint

13  transferred the actual beneficial interest in the promissory note,

14  that this transfer stripped MERS of its role as nominal

15  beneficiary, and that there has been no subsequent agreement re-

16  conferring nominal beneficiary status upon MERS.   See Vargas, 396

17  B.R. at 517 ("if [the lender] has transferred the note, MERS is no

18  longer an authorized agent of the holder unless it has a separate

19  agency contract with the new undisclosed principal.").   Plaintiff

20  similarly alleges that there is no servicing agreement between EMC

21  and the actual beneficiaries to the note and deed of trust.

22      Defendants have neither acknowledged nor responded to this

23  argument.   Instead, defendants state that the recorded documents

24  identify MERS as the nominal beneficiary.   As stated above, at

25  _____

26  [16] The court credits plaintiff's allegation at this stage.
    Moreover, defendants apparently concede this particular fact.

least one court has held that MERS's "nomination" at the time of the initial transaction is irrelevant if a subsequent assignment of the actual beneficial interest has occurred.  The only other document cited by defendants identifies MERS as EMC's nominee, but it is not itself an agency agreement, and the defendants do not contend that EMC is the actual party in interest.  More generally, defendants note that under the California statutes "the trustee, mortgagee, or beneficiary, or any of their authorized agents" may file the notice of default. Cal. Civ. Code § 2924(a)(1).  This observation does not respond to plaintiff's allegation that as a result of assignments, neither MERS nor EMC was the beneficiary nor an authorized agent thereof.[17]  Thus, defendants completely failed to respond to plaintiff's discussion of <u>Vargas</u> and the related legal theories.

The court need not conclude that <u>Vargas</u> provides the proper rule in this context.  On defendants' motion, however, defendants bear the burden of demonstrating that plaintiff has failed to provide a plausible legal theory.  Defendants cannot satisfy this burden while ignoring the theory actually offered by plaintiff.[18]

---

[17] Although the notice of default and notice of trustee sale were issued by Aztek, Aztek's authority purportedly derives from that of MERS and EMC.  <u>See, e.g.</u>, MERS's RFJN Exs. 4, 6, and as previously noted, it appears at least initially, unauthorized.

[18] In light of defendant's failure to meet their burden, the court has not extensively researched this issue. With this caveat, the court notes that it is not aware of any other opinions addressing a similar argument under California law.  The apparent dearth of caselaw on this argument should not be taken as an indication that the argument is without merit.  The district courts--and especially the courts in California, and especially the

1     Plaintiff's fourth argument is closely related to the third,

2  and alleges that the notice of default and notice of trustee's sale

3  were defective because they failed to identify the actual

4  beneficiary. The non-judicial foreclosure statutes require that

5  the notices explicitly identify the beneficiary or mortagee, even

6  if foreclosure is actually initiated by another party. Cal. Civ.

7  Code § 2924c. Plaintiff argues that this requires identification

8  of the actual beneficiary, in that their purpose is to identify the

9  party with the power to stop foreclosure or modify the loan. FAC

10 ¶ 35. Plaintiff alleges that when she tried to contact EMC and

11 MERS, the parties listed on the notices, and was informed that

12 these parties lacked the power to modify the loan. FAC ¶ 14.

13 Again, defendants have not addressed this argument.[19]

14

15 courts in the Eastern District--have been flooded with mortgage and
   foreclosure cases in the past year. In general, the briefing

16 tendered in these cases has been poor. As explained elsewhere in
   this order, it is generally appropriate for courts to confine their

17 analysis to arguments raised by the moving party. The quantity and
   quality of these cases therefore creates a context particularly

18 unsuited to broad analysis. Accordingly, other courts' silence on
   the Vargas argument should not be taken as an implicit rejection

19 thereof.

20 [19] Instead, defendants respond to an argument plaintiff did
   not make. Aztec apparently issued the notice of default on

21 February 11, 2009, but Aztec was not substituted as trustee until
   February 26, 2009. MERS's RFJN Ex. 4. Under California law, the

22 notice of default can be filed by "The trustee, mortgagee, or
   beneficiary, or any of their authorized agents." Cal. Civ. Code

23 § 2924(a)(1). Thus, Aztec could issue the notice of default prior
   to becoming a trustee if Aztec was an "authorized agent" of the

24 trustee or beneficiary. See also MERS's RFJN Ex. 4, page 2
   (identifying Aztec "as agent for the beneficiary," and identifying

25 EMC as the beneficiary and MERS as EMC's nominee).
   Any entity purporting to foreclose must derive its authority

26 from the trustee and/or beneficiary. Defendants argue that the
   link between Aztec and MERS/EMC was established, but plaintiff has

1    Accordingly, defendants' motion to dismiss plaintiff's claim

2  for wrongful foreclosure is granted in part.  The wrongful

3  foreclosure claim is dismissed insofar as it is predicated on the

4  first two theories identified above, but the court does not dismiss

5  the claim insofar as it is predicated on the third and fourth

6  theories.

7  **D.   Misrepresentation**

8    Plaintiff's fifth and sixth claims are for intentional and

9  negligent misrepresentation. These allegations fall short of the

10  standard required by Fed. R. Civ. P. 9(b).

11    The FAC's allegations supporting a claim for intentional

12  misrepresentation are that defendants misrepresented the material

13  terms of the loan, including representing that

14         [] It was the most advantageous loan for which
           Plaintiff qualified. [] It was a fixed-rate
15         low-interest loan as Plaintiff believed it was
           . . . Plaintiff's mortgage application
16         provided for 2% interest for 360 months and
           Plaintiff was led to believe those were the
17         real terms of her loan . . . [] The cited low
           rate interest rate was the actual interest
18         rate. [] Plaintiff's initial teaser payments
           would cover all of the interest.
19         [] Making the stated payments would not result
           in negative amortization. [] The cited low
20         interest rate was the regular rate, not merely
           a teaser. [] Plaintiff would be able to afford
21         to make the required payments. [] That
           Plaintiff's debt-to-income ratio was
22         sufficient to justify the loan. The loans
           would not automatically reset when the
23         principal balance of the loan exceeded certain
           specified percentage of the loan amounts,

24

25  not challenged this link.  Instead, plaintiff argues that MERS and
    EMC had no authority to delegate, because they were not authorized
26  by the actual beneficiary.

> requiring Plaintiff to pay double the amount
> Defendants represented she would have to pay.
> [] There was no prepayment penalty. [] The
> amount of the prepayment penalty was not so
> exorbitant that it made it economically
> impracticable and/or impossible for the
> Plaintiff to refinance the Premises.
> [] The existence, type, and amount of points
> and other brokerage fees paid to broker(s). []
> The points and other brokerage fees paid to
> broker(s) were lawful and reasonable. [] The
> loan satisfied generally accepted underwriting
> standards. [] The loan comported with prudent
> lending standards.

FAC ¶ 60.  These allegations also serve as the foundation for the claim of negligent misrepresentation. FAC ¶ 74.

These allegations are more detailed than those found in the initial complaint, and are considerably more detailed than the allegations offered by many other plaintiffs bringing analogous claims.  Plaintiff has largely specified the content of the alleged misrepresentations, and has identified these representations as having been made at the time and place the loan was negotiated (although this place is not further specified).  Nonetheless, plaintiff brings these claims against three defendants, yet plaintiff fails to specify "the role of each defendant in each scheme." Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist., 940 F.2d 397, 405 (9th Cir. 1991); see also Swartz v. KPMG LLP, 476 F.3d 756, 765 (9th Cir. 2007).  Accordingly, the court dismisses this claim without prejudice.  Plaintiff may amend this claim by specifying the various defendants' roles in the misrepresentations. Alternatively, plaintiff may seek to argue why such allegations are not required, despite Swartz and Lancaster.

**E.    Rosenthal Act**

Plaintiff's seventh claim alleges that all defendants violated California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act").

The Rosenthal Act prohibits creditors and debt collectors from, among other acts, making false, deceptive, or misleading representations in an effort to collect a debt. Cal. Civ. Code § 1788, et seq.  A "debt collector" is "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal. Civ. Code § 1788.2(c); see also Izenberg v. ETS Services, LLC, 589 F. Supp. 2d 1193, 1199 (C.D. Cal. 2008). Plaintiff alleges that defendants

> violated provisions of . . . section 1788(e) and (f) of the California Civil Code, and the Federal Fair Debt Collection Act, 15 U.S.C. Title 431, Subchap. V Section 1692 et seq. . . . by reporting past due payments even though Plaintiff has been working in good faith to reasonably modify loan payment terms in accordance with the received instructions and after when Plaintiff specifically disputed certain amounts due under the loan.

FAC ¶ 83.[20]  Plaintiff has not identified any other conduct as the basis for this claim.

EMC and MERS previously moved to dismiss this claim on the ground that they were not "creditors" within the meaning of the statutes and on the ground that their activities were removed from the ambit of the statutes because they were connected with a

---

[20]   The court notes that the California Civil code does not contain a section 1788(e) or 1788(f).

29

1  foreclosure.  The court rejected both arguments, and EMC and MERS

2  have not renewed their motion to dismiss this claim.

3       Greenpoint moves to dismiss on the ground that plaintiff has

4  not alleged that Greenpoint participated in the modification

5  negotiations or that Greenpoint had an interest in the loan at the

6  time the negotiations and reporting occurred.  In opposing

7  Greenpoint's motion, plaintiff speculates that it may be the case

8  that the loan was re-assigned back to Greenpoint, but plaintiff

9  does not allege that this occurred, and plaintiff does not address

10 the argument that Greenpoint is not alleged to have participated

11 in the negotiation.  The court therefore dismisses this claim as

12 to Greenpoint without prejudice.[21]

13 **F.   Unfair Competition**

14      California's Unfair Competition Law, Cal. Bus. & Prof. Code

15 § 17200, proscribes "unlawful, unfair or fraudulent" business acts

16 and practices.  Plaintiff's ninth claim alleges that all defendants

17 violated the UCL through unlawful practices alleged elsewhere in

18 the complaint.  FAC ¶ 92.[22]

19      The incorporated allegations fail to state a UCL claim based

20

---

21      [21] No party has addressed whether either the Rosenthal Act or
   the FFDCA prohibit the alleged conduct, i.e., truthful reporting
22 to credit agencies that a loan is in default despite the pendency
   of modification negotiations.  The court declines to address this
23 issue <u>sua sponte</u>.

24      [22] Plaintiff additionally alleges that EMC and MERS failed to
   comply with Cal. Civ. Code Section 2923.5, and that this unlawful
25 activity provides an additional predicate for the UCL claim.  FAC
   ¶ 93.  Presently only Greenpoint moves to dismiss this claim, so
26 the section 2923.5 allegations are not pertinent to this motion.

on fraudulent or unfair business practices.  As to fraud, Fed. R.

Civ. P. 9(b) applies to UCL claims sounding in fraud, and as

previously discussed plaintiff has failed to meet this standard.

As to unfair business practices, plaintiff fails to provide

defendants with any notice as to which alleged acts, if any,

constitute such practices, beyond a conclusory statement that the

"negative amortization loan at issue" is an unfair business

practice. FAC ¶ 92

As pleaded, plaintiff's UCL claim must proceed on the theory

that defendants acted unlawfully.  As discussed elsewhere in this

order, plaintiff has stated a claim against all defendants for

violations of RESPA and against EMC and Greenpoint under TILA.

These claims provide the "unlawful" predicate activity that may

support a UCL claim.[23]  Accordingly, defendants' motion to dismiss

is denied as to this claim.

**G.    Breach of the Implied Covenant of Good Faith and Fair Dealing**

Plaintiff's eighth claim alleges a breach of the implied

covenant of good faith and fair dealing against all defendants. In

the instant motion only defendant Greenpoint moves to dismiss,

arguing that plaintiff has not stated a claim upon which relief can

be granted.  Plaintiff claims that defendants violated the implied

covenant of good faith and fair dealing

> when they used their superior knowledge in,
> and inside information with respect to, real

---

[23] At this juncture, the court does not decide whether the declaratory claim for wrongful foreclosure may support an unfair competition claim.

> estate, lending, securities and finance industries, and further when they used their superior bargaining power to, among other thing, conceal and misrepresent certain material facts, depriving Plaintiff of an opportunity to properly review, analyze and negotiate the loan terms, and ultimately loan modification terms intentionally forcing Plaintiff into default and eventually into foreclosure proceedings.

FAC ¶ 88.  A claim for breach of the implied covenant of good faith and fair dealing requires a plaintiff to establish the existence of a contractual obligation and conduct that frustrates the other party's rights to benefit from the contract.  <u>Foley v. Interactive Data Corp.</u>, 47 Cal.3d 654, 683-684, 689-690 (1988).  Accordingly, entry into a contract itself cannot constitute a violation of the duty of good faith, and plaintiff's claim must identify conduct occurring post contract formation.

The only conduct plaintiff identifies that occurred post contract is deprivation of an opportunity to review loan modification terms with the purpose of intentionally forcing plaintiff into default.  Here, however, plaintiff has not alleged that Greenpoint played any role in the foreclosure proceedings or discussions of loan modification. FAC ¶¶ 14, 28, 29. Accordingly, the plaintiff's claim for a breach of the implied covenant of good faith and fair dealing is dismissed as to Greenpoint with leave to amend.

**H.   Declaratory and Injunctive Relief**

Plaintiff's tenth cause of action, only opposed in the instant motion by Greenpoint, is a plea for injunctive and declaratory

relief against all defendants.  Inasmuch as plaintiff requests a preliminary injunction and restraining order, FAC ¶ 105, plaintiff's request is not properly before the court.  Although including such a request as part of a complaint is proper in state court, Federal rules requires a separate filing pursuant to Fed. R. Civ. P. 65.  Accordingly, plaintiff's request for injunctive relief is dismissed.

## I.   Joinder

As a final argument, Greenpoint argues that the mortgage broker is a necessary party, and that all claims should be dismissed for failure to join the broker.[24]  The Ninth Circuit has interpreted Fed. R. Civ. P. 19(a) as "provid[ing] that a party is 'necessary' in two circumstances: (1) when complete relief is not possible without the absent party's presence, or (2) when the absent party claims a legally protected interest in the action."  United States v. Bowen, 172 F.3d 682, 688 (9th Cir. 1999).  The instant case does not present either circumstance.

As to the first, Greenpoint argues that the broker should be joined because many of the duties were owed by the broker rather than the lender.  This argument speaks to defenses and liability, and not to the court's ability to afford relief on claims found to be meritorious, if any.  The Northern District of California

---

[24] The court notes that although Greenpoint's motion is styled as a motion under Fed. R. Civ. P. 12(b)(6), dismissal for failure to join a necessary party arises under Fed. R. Civ. P. 12(b)(7). Rule 12(b)(7), like Rule 12(b)(6), requires the court to treat the complaint's allegations as true.

1   recently held, in a case where borrowers alleged that a lender
2   engaged in discriminatory lending practices, that while the
3   brokers' conduct might be relevant to the lender's defense, there
4   was no reason why the brokers needed to be named as parties rather
5   than merely called as witnesses. In re Wells Fargo Mortg. Lending
6   Discrimination Litig., No. M: 08-CV-1930, 2009 WL 2473684, *3, 2009
7   U.S. Dist. LEXIS 72806, *13 (N.D. Cal. Aug. 11, 2009). The court
8   follows this approach here.

9      The second circumstance applies only when the absent party
10  "claims an interest relating to the subject of the action." Fed.
11  R. Civ. P. 19(a)(1)(B). In a contract dispute, the Ninth Circuit
12  has held that an absentee did not satisfy this language where the
13  absentee was "not a party to any of the [contracts], and ha[d]
14  never asserted a formal interest in either the subject matter of
15  this action or the action itself." Northrop Corp., 705 F.2d at
16  1043-44. Nothing indicates that the brokers have an interest in
17  the litigation here. Nor is this a case where "the action might
18  detrimentally affect a party's or the absentee's ability to protect
19  his property or to prosecute or defend any subsequent litigation
20  in which the absentee might become involved." Charles Alan Wright,
21  Arthur R. Miller, Mary Kay Kane, 7 Fed. Prac. & Proc. Civ. § 1604
22  (3d ed.). See also In re Wells Fargo Mortg. Lending Discrimination
23  Litig., 2009 WL 2473684, *3, 2009 U.S. Dist. LEXIS 72806, *13
24  (brokers not necessary parties under either prong), accord Moses
25  v. Citicorp Mortg., 982 F. Supp. 897, 903 (E.D.N.Y. 1997) (broker
26  not necessary party to borrower's claim against lender).

1    The court acknowledges that one court has found that brokers
2    were necessary parties to borrowers' claims against lenders.
3    Steele v. GE Money Bank, No. 08 C 1880, 2009 WL 393860, *9, 2009
4    U.S. Dist. LEXIS 11536, *25 (N.D. Ill. Feb. 17, 2009).  In Steele,
5    the "complaint [was] based on the existence of an interrelationship
6    between the defendant lenders and the non-party brokers and actions
7    taken by the brokers allegedly at the direction of the defendants."
8    Insofar as the present complaint involves similar allegations, such
9    allegations pertain to claims that the court otherwise dismisses.
10   If plaintiff amends the complaint to state claims seeking to hold
11   defendants liable for the actions of non-parties, the parties may
12   revisit the joinder issue.  On the present motion, Greenpoint's
13   motion to dismiss for failure to join a necessary party is denied.

14                          **IV. CONCLUSION**

15       For the reasons stated above, the court GRANTS IN PART
16   defendants' motions to dismiss (Dkt. Nos. 18, 20).

17       The court DISMISSES WITHOUT PREJUDICE the following claims:
18       1.   Plaintiff's third claim, for TILA damages, insofar as
19            this claim is predicated on an inflated appraisal or
20            information regarding alternative loans.
21       2.   Plaintiff's fourth claim, under RESPA, insofar as this
22            claim is predicated on 12 U.S.C. § 2605 and failure to
23            respond to a qualified written request.
24       3.   Plaintiff's second claim, for wrongful foreclosure,
25            insofar as it is predicated on the "produce the note"
26            theory or the argument that MERS could not be named as

35

1            a nominal beneficiary at the time of the initial

2            transaction.

3    4.   Plaintiff's fifth claim, for fraud.

4    5.   Plaintiff's sixth claim, for negligent

5            misrepresentation.

6    7.   Plaintiff's seventh claim, under the Rosenthal Act, as

7            to Greenpoint only.

8    8.   Plaintiff's eighth claim, for violation of the implied

9            covenant of good faith and fair dealing, as to

10           Greenpoint.

11    9.   Plaintiff's tenth claim, a freestanding claim for

12           injunctive relief.

13   The court DENIES the pending motions as to the following:

14    1.   Plaintiff's third claim, under TILA, insofar as the

15           claim is predicated on the violations of 15 U.S.C. §§

16           1639(a), (b), and (h) discussed in this order.

17    2.   Plaintiff's fourth claim, under RESPA, insofar as the

18           claim is predicated on violations of 12 U.S.C. § 2607(a)

19           and (b).

20    3.   Plaintiff's second claim, for wrongful foreclosure,

21           insofar as it is predicated on theories regarding

22           assignment of the actual beneficial interest.

23    3.   Plaintiff's ninth claim, under California's Unfair

24           Competition Law.

25   Plaintiff is granted twenty-one (21) days from the date of

26 this order in which to file an amended complaint, responding solely

1   to the defects identified above.

2       IT IS SO ORDERED.

3       DATED:  May 6, 2010.

4

5

6       _____
        LAWRENCE K. KARLTON
7       SENIOR JUDGE
        UNITED STATES DISTRICT COURT
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26